FRANK FERNANDES *vs.* WILLIAM MEDEIROS.

Bristol.   October 24, 1949. — February 7, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or his family or his invitee, Common stairway.

Negligence of the defendant was not shown and a verdict should have been ordered for him in an action of tort by an invitee of a tenant at will against the owner of a three family house for personal injuries sustained when a step in an inside common stairway leading to a cellar and in the control of the defendant gave way, where the evidence showed merely that the step was wooden, that at the beginning of the tenancy and up to the time of the accident to the plaintiff a few weeks later it "looked all right," and that after the accident it "seemed to be rotted," the "cross piece was broken . . . it was just braced by a few bricks and a little dirt underneath."

TORT. Writ in the Superior Court dated September 7, 1944.

The action was tried before *O'Brien*, J.

*G. Walsh*, (*S. E. Bentley* with him,) for the defendant.

*J. T. Farrell*, for the plaintiff.

COUNIHAN, J. This is an action of tort by an invitee of a tenant against a landlord for negligence. The jury found for the plaintiff, and the action is here on the defendant's exception to the denial of a motion for a directed verdict.

The evidence most favorable to the plaintiff may be summarized as follows: The defendant on December 14, 1943, purchased a three family house in Fall River, the third floor of which was occupied by one Aguiar as a tenant at will, and the tenancy of Aguiar under the defendant then commenced. The accident happened on January 29, 1944, when the plaintiff was delivering fuel oil to Aguiar, in the cellar of this house. There were stone stairs with a wooden step or threshold at the top, leading to the cellar. These stairs were in control of the defendant and used in common by all the tenants. The entrance to the step at the top of the stairs was from a door on the outside of the house. The plaintiff testified that he started to go to the cellar and stepped on a piece of wood like a step on the inside and fell down the stairs; that as he stepped on the wooden step that was near the door "it went down, it sunk on me . . . it opened like and it sunk down like" and that is when he fell down the stairs; that he thought the piece of wood sank two or three inches as he stepped on it; that he had never been on these premises before; and that he did not look at the step before he started down nor did he look at it afterwards. Evidence as to the condition of the step came from one Silva, whom the plaintiff was assisting in the delivery of the oil. He testified that between December 14, 1943, and the time of the accident he had been in and out of the cellar and over the step and stairway at least twelve times; that the step on which the plaintiff fell, as well as the others, "looked all right" on December 14, 1943, and looked all right on every occasion thereafter when he had used the

step, up to the day of the accident; that immediately after the accident, he looked at the stairs and observed that the top step was broken in the center and that the broken piece was pushed in about four inches. A witness who saw the step for the first time within an hour after the accident testified, "The top step was a wooden step to me. It seemed to be a wooden step. It was a wooden step. About the center of that step was broken and it seemed to be rotted." Another who saw the step for the first time shortly after the accident testified, "I saw the wooden step broke." This witness also testified, "when I looked at it [after the accident], I could see that cross piece was broken. . . . It was just braced by a few bricks and a little dirt underneath."

The duty of a landlord to a tenant in respect to a common stairway is that of due care to keep it in such condition as it was in, or purported to be in, at the time of the letting. *Andrews* v. *Williamson*, 193 Mass. 92, 94. It has also been said, "The landlord owes a duty, not to keep the common passageway in as good a condition as that in which it was or appeared to be at the time of the letting, but rather to use reasonable care to do so." *Sneckner* v. *Feingold*, 314 Mass. 613, 614. The same duty exists toward an invitee of the tenant. *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170, 172.

The burden was upon the plaintiff to show that his injury was a result of a change in the condition of the premises from the condition in which they were or appeared to be at the time of the letting, and that in the exercise of reasonable care and diligence the defendant should have discovered the change long enough before the time of the injury to the plaintiff to have repaired or remedied it. *Leslie* v. *Glazer*, 273 Mass. 221, 223. *Sullivan* v. *F. W. Woolworth Co.* 305 Mass. 378, 379–380. Here the action against the defendant rests on evidence that the step "looked all right" at the time when the tenancy commenced and up to the day of the accident; that after the accident it "seemed to be rotted" and that it gave away; that the "cross piece was broken. . . . It was just braced by a few bricks and a little dirt underneath."

This evidence shows no negligence on the part of the defendant. There is nothing to indicate that he knew or should have reasonably known of the deterioration in the step which caused this accident. Nor is there any evidence to show that the "cross piece" broke because it was braced only by a few bricks and dirt and not because of inside rot not visible upon such inspection as the defendant could reasonably have been expected to make. There was no evidence of any obvious change in the condition of the step from the commencement of the tenancy until after the accident.

We believe the landlord's liability in this action is governed by *Berg* v. *Elder*, 290 Mass. 540, 541–542. That case involved a defective railing on a veranda. The tenancy began in July, 1930, and the accident happened in May, 1931. The evidence there was that in the month of July before the accident the tenant for whom the plaintiff worked had occasion to look at the railing and that he saw nothing wrong with it until after the accident. It was there said, "The record discloses no evidence tending to show any peculiar degree of exposure to the weather, or that the railing was so old that decay not evident to the eye ought to have been anticipated or any other special circumstance which should have indicated . . . that particular examination ought to have been made for concealed defects." *Kirby* v. *Tirrell*, 236 Mass. 170, 172.

This action is distinguishable from *Barre* v. *Epstein*, 299 Mass. 577, and *Chambers* v. *Durling*, 306 Mass. 327, where because of rain or exposure it might reasonably be expected that decay would occur. Here the step was entirely inside the building.

It follows that there was error in the denial of the defendant's motion for a directed verdict.

*Exceptions sustained.*
*Judgment for the defendant.*