MARK B. FURBER *vs.* ALBERT RODNEY & another.

Middlesex.    November 4, 1953. — January 5, 1954.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or one having his rights, Elevator.

Even if the owner of a business building was in control of a freight elevator therein used in common by the tenants, he was not liable to an employee of one of the tenants injured through falling into the elevator well because of a defective condition of the elevator gate where the condition of the gate at the time of the letting to that tenant was left conjectural by the evidence.

TORT. · Writ in the Superior Court dated July 5, 1950. The action was tried before *Broadhurst,* J.

*Kieran T. Temple,* for the defendants.

*James F. Lawton,* for the plaintiff, submitted a brief.

COUNIHAN, J.    This is an action of tort by an employee of a tenant against a landlord for negligence.    The jury found for the plaintiff, and the action is here upon exceptions of the defendants to the denial of a directed verdict on the plaintiff's opening, to the denial of a directed verdict at the close of the evidence, and to the admission of evidence. Originally there was a count in the declaration alleging the existence of a nuisance but that was waived by the plaintiff at the trial.

Because of what shall hereinafter appear we are of opinion that there was error in the denial of the defendants' motion for a directed verdict at the close of the evidence.    We need not therefore consider the other exceptions.

In its aspects most favorable to the plaintiff the evidence was as follows: On August 1, 1949, the J. P. W. vonLaer Co., a corporation hereinafter called vonLaer, became a tenant at will of the second floor of a five story building numbered 150 Milk Street in Boston. The Tropico Company, hereinafter called Tropico, on the same day became a tenant of the fourth floor. These two were the only tenants in the building, which was owned by the defendants. The plaintiff was an officer and employee of vonLaer. In the building was a freight elevator, in a partitioned section, running from the basement to the fifth floor. Both tenants had a right to use the elevator. Prior to August 1, 1949, vonLaer had been a tenant of the entire building for about fifteen years. The gate on the elevator had been in use during all that period.

About two months prior to August 1, 1949, this gate became "partly broken" and "thereafter continued to become more broken and was tied together with rope." The plaintiff knew of this condition of the gate. Other evidence was that the gate was broken during the two month period prior to the accident and that the defendants, after having been notified of the condition of the gate, promised to repair it. Other than this there was no evidence from which the condition of the gate on August 1, 1949, could be inferred, and likewise there was no evidence as to when the gate became "more broken" or who tied it together with rope. There was no evidence either as to when the defendants were notified of the condition of the gate or when they promised to repair it.

On September 17, 1949, shortly after 8 A.M. the plaintiff found a "two-wheeled truck" on the first floor of the building. He "started to push the truck toward the elevator with one hand on the truck, and with the other hand he reached into the elevator well to pull the cable and all of a sudden he fell into the elevator well with the truck."

"As a condition of the tenancy" of vonLaer the light

bulbs had been removed from the partitioned section on the first floor where the elevator was. There was no evidence as to who removed these bulbs, but the plaintiff admitted that he knew that these bulbs had been removed prior to August 1, 1949, and had not been replaced up to the time of the accident. He also admitted that it was so dark at the time of the accident that he did not see the gate and that, even if the gate were there, he could not have seen it because of the darkness. The first time he saw the gate on that morning was after he had fallen into the basement and at that time it was "swung inward toward the elevator well from the first floor." All electric current for the building was on vonLaer's meter and it collected from the other tenant its share of the current used.

The defendants had no keys to the building until October, 1949, when they received them from vonLaer when it vacated the building. No repairs of any kind were made by the defendants on the elevator, the gate, or any part of the building from April 27, 1949, when they acquired it until after vonLaer had vacated.

Assuming, without deciding, that the defendants were in control of the elevator and gate at the time of the accident, we are of opinion that on the evidence the action should not have been submitted to the jury for there was not enough evidence to warrant a finding that the defendants were negligent.

Our court has repeatedly held that the duty of a landlord to a tenant or to one using premises in the right of a tenant, in respect to premises used in common with other tenants, is that of due care to keep them in such condition as they were in, or purported to be in, at the time of the letting. *Andrews* v. *Williamson*, 193 Mass. 92, 94. It has also been said, "The landlord owes a duty, not to keep the common passageway in as good a condition as that in which it was or appeared to be at the time of the letting, but rather to use reasonable care to do so." *Sneckner* v. *Feingold*, 314 Mass. 613, 614. And it was recently said in *Fernandes* v. *Medeiros*, 325 Mass. 293, at page 295, "The burden was

upon the plaintiff to show that his injury was a result of a change in the condition of the premises from the condition in which they were or appeared to be at the time of the letting, and that in the exercise of reasonable care and diligence the defendant should have discovered the change long enough before the time of the injury to the plaintiff to have repaired or remedied it." We believe that the plaintiff has not sustained that burden in this action.

There was no direct evidence as to the condition of the elevator or gate at the time the tenancy here began and none from which its condition then could be inferred. In fact it appeared that the gate became broken two months prior to ·August 1, 1949, or at least during the two month period before the accident and thereafter it was "more broken and was tied together with rope." When it first became broken, or when it became "more broken and was tied together with rope" does not appear. All this might have happened before the letting, or even on the morning of the accident if the version as to how the accident happened as given in the written statement of the plaintiff were to be believed. We are forced to the conclusion that the condition of the elevator and the gate at the time of the letting was left to surmise and conjecture.

*Exceptions sustained.*
*Judgment for the defendants.*