MARK J. BOUCHARD vs. RAYMOND G. DEGAGNE & another.

Middlesex. April 7, 1975. — June 4, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Negligence*, One owning or controlling real estate, Invited person, Licensee. *Stare Decisis.*

The rule created in *Mounsey* v. *Ellard*, 363 Mass. 693 (1973), that the occupier of real estate owes a common duty of ordinary care to all lawful visitors, is to be applied retroactively to all relevant and viable cases. [47-50]

Evidence that a homeowner remodeling his house knew small children therein were frequently near sliding glass doors outside of which was an eight-foot drop and that a barrier of flower boxes had been removed, warranted a finding of negligence on his part toward a child visitor who passed from the kitchen through the doors and fell to the ground. [50]

TORT. Writ in the Superior Court dated March 18, 1971.

The action was tried before *Mitchell*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*David W. Woods* for the defendants.

*Robert P. Sullivan* for the plaintiff.

HENNESSEY, J. In this case we are faced with the issue whether to apply retroactively our holding in the case of *Mounsey* v. *Ellard*, 363 Mass. 693 (1973), which abolished the distinction between licensees and invitees in determining the landowner's duty to visitors on the premises.[1] We conclude that the rule of the *Mounsey* case is to be applied retroactively.

---

[1] The parties in their briefs and arguments assume correctly that the *Mounsey* case abolished the distinction between invitees and visitors, like the minor plaintiff here, whom this court has in many cases

The case is before us on an outline bill of exceptions of one of the defendants. The minor plaintiff, a two and one-half year old boy, sustained personal injuries while on the premises owned by the defendants, who are husband and wife. The minor plaintiff's action was brought through his father and next friend, Norman J. Bouchard.[2] The plaintiff's substitute declaration was in two counts, alleging negligence, against the male defendant and the female defendant, respectively. The defendants seasonably filed a motion for a directed verdict as to both counts, the motion was denied, and the exceptions of the defendants were saved. The jury returned a verdict for the plaintiff against the male defendant, and returned a verdict in favor of the female defendant. The male defendant, in arguing that a verdict should have been directed as to the count against him, has waived all defenses asserted in his answer except a general denial.

The facts are as follows. The plaintiff's father is the brother of the female defendant. On the day of the accident, April 9, 1970, the plaintiff's and the defendants' families were neighbors. About 9 A.M., on that date, by previous arrangement, the plaintiff's mother drove him, age two and one-half, and his brother, Donald, almost four years of age, to the defendants' home. The boys had been frequent visitors to the defendants' home. The plaintiff's mother was to drive one of the defendants' children to an orthodontist in Acton since the female

characterized by the words "social guests" or similar terms. See the collected terminology in the concurring opinion of Quirico, J., in *Mounsey* v. *Ellard, supra,* at 714. The *Mounsey* case abolished the distinction between business invitees and all other entrants on the land, except trespassers. "[We] create a common duty of reasonable care which the occupier owes to all lawful visitors." *Id.* at 707.

[2] The action was apparently commenced both in the names of the minor plaintiff and his father; the father's counts for consequential damages were waived and the jury were instructed to include medical expenses in their verdict.

defendant did not drive. The plaintiff's presence with his mother was expected, and the children were to stay with the female defendant during this trip.

The male defendant was not at his home at the time of the plaintiff's injuries. The male defendant had been in the process of remodeling the home since the summer of 1969. Off the kitchen, at the back of the house were sliding glass doors which had been installed during the summer of 1969. The sliding doors were to connect with an outdoor patio. Since the patio had not yet been built, there was approximately an eight-foot drop from the bottom of the sliding doors to the ground.

The sliding doors were customarily kept closed and, until approximately two days prior to the plaintiff's injuries, a number of flower boxes had served as a barrier between the kitchen and the doors. This barrier had been removed by the female defendant. There were also screens available for placement beyond the sliding doors, but these were not in place at the time of the accident.

As the plaintiff entered the kitchen of the defendants' home, he bumped his head on a projection, cried and was picked up and comforted by the female defendant. She then set him down, in the kitchen, about three feet from the sliding doors, which were open about one and one-half feet. There was evidence that the female defendant had opened the door a little earlier to respond to an emergency in the backyard involving one of her younger children who was climbing a tree. The female defendant then turned her attention to a rip in the clothing of the plaintiff's mother, and left the room. The plaintiff's older brother cried out in alarm, and their mother became aware of the open sliding door and the plaintiff's disappearance. She ran outside and discovered the plaintiff lying face down on the ground below the sliding doors.

1. We turn first to the issue whether the male defendant owed a duty of ordinary care to the plaintiff. If the plaintiff was a social guest, under the old rule he

could recover only on proof of gross negligence, or wilful, wanton or reckless conduct. The declaration sounds in negligence, and it seems clear also that the evidence does not warrant an inference of gross negligence, if that proof is required.

The plaintiff argues, first, that it is not necessary to apply the *Mounsey* doctrine in the instant case, since he claims that the plaintiff's visit to the defendants' house was for their economic benefit. In support of this argument, he cites such cases as *Pope* v. *Willow Garages Inc.* 274 Mass. 440 (1931), *Kelley* v. *Goldberg,* 288 Mass. 79 (1934), and *Rollins* v. *Marengo,* 354 Mass. 765 (1968). Whether an economic benefit within the meaning of those cases could be found in the circumstances of this case is a doubtful proposition at best, but we need not consider the argument further because we conclude that the case of *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), is to be applied retroactively and is controlling as to the instant case.

The *Mounsey* case was decided on June 6, 1973. Its holding is best summed up by our words, "Therefore, we no longer follow the common law distinction between licensees and invitees and, instead, create a common duty of reasonable care which the occupier owes to all lawful visitors." *Id.* at 707. We expressed no view in that opinion whether the doctrine should be applied retroactively or merely prospectively. The plaintiff here argues that we applied the new rule retroactively at least in favor of the plaintiff in the *Mounsey* case. He therefore urges that we should apply the new rule retroactively in all cases at least as far back as January 20, 1967, the date of the injury in the *Mounsey* case. (The accident in the instant case occurred on April 9, 1970.) We disagree with that proposition.

It is not unusual for an individual bringing an appeal in a challenge to existing law to obtain relief while others somewhat similarly situated are not afforded the benefit of retroactive application of the principles established by

that first appellate determination. See, e.g., *McIntyre* v. *Associates Financial Serv. Co. of Mass. Inc.* 367 Mass. 708 (1975) (pre-*Fuentes* v. *Shevin,* 407 U. S. 67 [1972], real estate attachments are valid). Cf. *Ricker* v. *Northeastern Univ.* 361 Mass. 169 (1972); *Higgins* v. *Emerson Hosp.* 367 Mass. 714 (1975) (statute abolishing doctrine of charitable immunity is not retrospective in effect). Compare in the criminal law *Linkletter* v. *Walker,* 381 U. S. 618 (1965); *Johnson* v. *New Jersey,* 384 U. S. 719 (1966); *Stovall* v. *Denno,* 388 U. S. 293 (1967). However we are not drawn into the problem of establishing a cutoff date for the applicability of the *Mounsey* principles because we conclude that those principles shall be retroactive as to all relevant and viable cases.

In now holding that the *Mounsey* rule is to be applied retroactively, we have no hesitancy in concluding that our decision will not in any serious way impair existing interests nor will any expectation be disappointed or any reliance be defeated. See *Diaz* v. *Eli Lilly & Co.* 364 Mass. 153, 167 (1973). The precautionary conduct of this or almost any other landowner almost certainly was not based on any appreciation of the subtle distinction between invitees, and social guests and licensees. We believe that problems of insurance coverage are almost certain to be minimal; we base this belief in part on the fact that the heavy burden of proof imposed under the gross negligence requirement of the old rule had been substantially undermined by a large number of cases which held that an economic benefit had been conferred on the landowner by the presence and purpose of his guest. See *Mounsey* v. *Ellard,* 363 Mass. 693, 702-706 (1973).

As we did in the *Diaz* case, *supra,* we declare further that where the claim for the physical injuries has been concluded by judgment or settlement or by the running of the statute of limitations prior to the rendering of this opinion, the *Mounsey* doctrine is not to be regarded as in any way benefiting or reviving a plaintiff's action.

Our holding as to retroactivity is not confined to cases involving social guests only, but applies to all cases involving plaintiffs who are entitled to ordinary care under the *Mounsey* rule.

2. Having determined that the defendants' duty to the plaintiff is measured in terms of negligence, we must decide whether the evidence warranted an inference of negligence of the male defendant. Clearly it did. The presence of small children near the doors was a frequent occurrence, and this fact could be found to have been known to the male defendant; there was a drop of eight feet outside the doors; former barriers had been removed, and it could be found that the male defendant knew of this; the doors were easily unlatched and opened from the inside; it was reasonably foreseeable that some person would leave the doors open while small children were in the room.

*Exceptions overruled.*