Mirick *v.* Galligan.

LAURENCE F. MIRICK *vs.* ROBERT E. GALLIGAN, trustee.[1]

Norfolk.    January 5, 1977. — March 11, 1977.

Present: QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Practice, Civil,* Directed verdict.  *Landlord and Tenant,* Common area,
Landlord's liability to tenant or one having his rights.  *Negligence,*
One owning or controlling real estate, Contributory.

In an action against a landlord by a tenant injured when he slipped in
a hole on the landlord's premises, evidence warranted findings that
the accident took place in a common area of the premises and that
the landlord had failed to use reasonable care to keep the area in
as good a condition as it was at the time the tenancy began [148-
150]; the tenant was not barred as matter of law from recovery by
his contributory negligence [150-151].

TORT.   Writ in the Superior Court dated May 2, 1972.
The action was tried before *Donahue,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Enoch O'D. Woodhouse, II,* for the plaintiff.
*John R. Carney, Jr.,* for the defendant.

QUIRICO, J.   This is an appeal from a judgment on a
directed verdict for the defendant landlord in a tenant's
action for negligence in the maintenance and care of the
landlord's premises. The landlord had acquired a building,
which was located in Quincy, in the fall of 1971. The
plaintiff had been a tenant in the building for about eight
years prior to the accident, and had been the custodian for
the prior owner. In January, 1972, the landlord placed a
receptacle ("dumpster") for collecting refuse on hilly and

[1] Robert E. Galligan, trustee of R.D.B. Realty Trust, will be referred
to herein as the landlord.

Mirick *v.* Galligan.

uneven terrain approximately eighty feet from the building. In the late afternoon of February 10, 1972, as the plaintiff returned from depositing rubbish in the dumpster, he fell and was injured, apparently slipping in a hole in the ground that was covered by snow.[2] The plaintiff and two neighbors testified that the hill had ruts, potholes and depressions before the placement of the dumpster, and that the holes were deepened and enlarged after its installation.

At the close of the plaintiff's evidence, which consisted solely of his testimony and that of the two neighbors, the trial judge granted the defendant's motion for a directed verdict for reasons set forth in the margin.[3] The plaintiff appealed to the Appeals Court, and we transferred the case here for direct review. G. L. c. 211A, § 10 (A).

The only question before us is whether the verdict was properly directed. We hold that it was not. A directed verdict can be upheld only where, construing the evidence most favorably to the plaintiff, it is insufficient to support

---

[2] The complaint alleges that the dangerous condition of the yard caused the injury. There was testimony that the area was hilly and rutted and covered with four or five inches of snow at the time of the accident. Neither party has addressed the import of G. L. c. 84, § 21, requiring notice in actions founded on defective conditions caused by snow or ice. See *Perry* v. *Medeiros,* 369 Mass. 836, 842 (1976); *Goodwin* v. *Fall River,* 228 Mass. 529, 533 (1917).

[3] "The Court orders that a verdict be entered for the defendant in this matter by direction for the reasons that the plaintiff failed to prove the defendant negligent; secondly, the alleged defective condition which the plaintiff claims caused his injury was present on the date the tenancy ensued between the plaintiff tenant and defendant landlord. There was no appreciable or noticeable change in that condition up to the date and time of the accident. Thirdly, the plaintiff was aware of the defective condition which caused his fall on the date the tenancy began, he saw it four or five days before the fall, and was aware of its existence just prior to the fall.

"As a matter of law, he was contributorily negligent to such a degree that he could not recover even under the provisions of General Laws, Chapter 231, Section 85, so-called comparative negligence, and for the further reasons as stated in the Defendant's Motion for Directed Verdict."

The defendant's motion assigned as grounds that "[t]he plaintiff has failed to sustain his burden of proof that the defendant breached any duty owed to the plaintiff" and that "[t]he plaintiff's voluntary choice of a known precarious path with an admitted alternative available precludes his recovery."

a verdict in his favor. *Berger* v. *Stoner,* 357 Mass. 659, 660 (1970). *Kelly* v. *Railway Express Agency, Inc.,* 315 Mass. 301, 302 (1943).

The issue is thus the duty of a landlord to his tenant, and whether there was evidence from which a jury could decide that the duty had been violated.

The case has been argued on the theory that the extent of the landlord's tort obligation to the tenant is to use reasonable care to keep common areas of the premises in as good a condition as they were or appeared to be at the time the tenancy began. *Lowe* v. *National Shawmut Bank,* 363 Mass. 74, 77 (1973), and cases cited. *Dolan* v. *Suffolk Franklin Sav. Bank,* 355 Mass. 665, 667 (1969), and cases cited. *Brown* v. *A.W. Perry Co.,* 325 Mass. 479, 481 (1950).

Neither party has addressed the impact of *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), *Bouchard* v. *DeGagne,* 368 Mass. 45 (1975), or *Boston Hous. Auth.* v. *Hemingway,* 363 Mass. 184 (1973), which altered the traditional duties of landowners. See *Lindsey* v. *Massios, ante,* 79 (1977).[4] In *DiMarzo* v. *S. & P. Realty Corp.,* 364 Mass. 510, 514 (1974), this court stated that "[w]e might well be inclined toward a reconsideration of the rules of tort liability of lessors under a tenancy at will" but neither that case nor this one requires such reconsideration. Since such a reevaluation has not been briefed or argued, we will not now undertake the task. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *Mounsey* v. *Ellard,* 363 Mass. 693, 710 (1973) (Quirico, J., concurring in part and dissenting in part).

Our inquiry is whether the plaintiff submitted evidence from which the jury would be warranted in finding that

---

[4] For discussion of recent trends involving a landlord's tort liability, see *Boston Hous. Auth.* v. *Hemingway,* 363 Mass. 184, 203-220 (1973) (Quirico, J., concurring in part and dissenting in part); *Sargent* v. *Ross,* 113 N.H. 388, 64 A.L.R.3d 329 (1973); *Presson* v. *Mountain State Properties, Inc.,* 18 Ariz. App. 176, 177-179 (1972); *Clarke* v. *O'Connor,* 435 F.2d 104, 109-111 (D.C. Cir. 1970); Note, 1973 Ann. Survey Mass. Law § 1.9, at 40-44; Restatement (Second) of Property § 16.6, Comment & Reporter's Note at 172-178 (Tent. Draft No. 4, 1976).

the accident took place in a common area of the premises, and that the landlord had failed to use reasonable care to keep the common area in question in as good a condition as it was or appeared to be at the time the tenancy began, which was when the defendant became the owner of the premises. See *Cairns* v. *Giumentaro*, 339 Mass. 675, 677 (1959).

There was testimony which would permit a jury to decide that the dumpster was placed in a common area which the tenants were authorized to use. While there was no evidence of any specific arrangement with the landlord about the use of the dumpster, the plaintiff testified that the landlord placed the dumpster to collect refuse and that the plaintiff dropped his rubbish there "[a]t least every other day." The tenant recited an earlier conversation with the landlord about the location of ash barrels; the landlord stated that he was planning on replacing the barrels with a dumpster. This and further testimony is not compelling, but permits an inference of a permissive use of the common area. *Boday* v. *Thibault*, 337 Mass. 243, 245 (1958), and cases cited. See *Finn* v. *Peters*, 340 Mass. 622, 624-625 (1960); Annot., 68 A.L.R.3d 382 (1976).

There was also testimony regarding the deterioration of the condition of the premises after the dumpster was placed there. The three witnesses concurred that the terrain was uneven with ruts and potholes before the placement of the dumpster. The plaintiff said the hole was initially three feet wide, four to five inches in length, and two to three inches in depth. After the arrival of the dumpster, the hole increased to about four to six inches in depth. One neighbor testified that the hole was initially about three inches deep and increased to about six inches. A second neighbor described the weekly emptying of the dumpster; a truck lifted the dumpster and then dropped it to the ground. The hole consequently worsened and enlarged. He further testified that a month before the accident the saucer shaped hole was about four to five feet wide, six to eight feet long, and four to five inches deep,

and that by the time of the accident it had increased in length by about two or three feet, but he noticed no other changes.

This testimony would permit a jury to find that there had been a change in the condition of the premises since the beginning of the tenancy. *Crea* v. *Stunzenas,* 344 Mass. 265, 267 (1962). *Menard* v. *Tessier,* 328 Mass. 286, 287 (1952). Since this change is the gravamen of his claim, the plaintiff's argument that the landlord was negligent by the very fact of placing the dumpster on hilly terrain is unavailing.

As we said in *Fernandes* v. *Medeiros,* 325 Mass. 293, 295 (1950): "The burden was upon the plaintiff to show that his injury was a result of a change in the condition of the premises from the condition in which they were or appeared to be at the time of the letting, and that in the exercise of reasonable care and diligence the defendant should have discovered the change long enough before the time of the injury to the plaintiff to have repaired or remedied it." The plaintiff did not present a compelling case, indeed it was a barely sufficient one, but he was nonetheless entitled to a jury determination whether the enlargement of the hole was the result of negligence attributable to the landlord and whether the enlargement caused the injury. *Zezuski* v. *Jenny Mfg. Co.,* 363 Mass. 324, 327-329 (1973).[5]

The further question whether the plaintiff's contributory negligence barred his recovery was likewise for the jury. General Laws c. 231, § 85, as appearing in St. 1969, c. 761, § 1, provides that "[c]ontributory negligence shall not bar recovery in any action by any person . . . to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is

---

[5] The judge's reasons for allowing the defendant's motion for a directed verdict, note 2, *supra,* appear to be based on an assessment of the weight of the evidence, rather than its sufficiency for submission to the jury.

sought."[6] While the plaintiff testified that he knew of the hole that led to his injury, this "knowledge of the defect was evidence which the jury might consider in determining the question, [but] it did not as matter of law require a finding of contributory negligence." *Spencer* v. *Bartfield,* 334 Mass. 667, 668 (1956). *Goldstein* v. *Gontarz,* 364 Mass. 800, 804 (1974). Only in a rare case may a judge rule as matter of law that a plaintiff's contributory negligence bars recovery. *Halley* v. *Hugh Nawn, Inc.,* 356 Mass. 28, 30 (1969). *Joyce* v. *New York, N.H. & H.R.R.,* 301 Mass. 361, 363 (1938). This is not such a case, particularly because of the importance of the degree of negligence by each party in the determination of fault under the comparative negligence approach. See 1969 Ann. Survey Mass. Law §§ 2.1-2.9, at 47-59; W. Prosser, Torts § 67 (4th ed. 1971); Prosser, Comparative Negligence, 51 Mich. L. Rev. 465 (1953).

For these reasons the direction of the verdict was improper.

*Judgment reversed.*

---

[6] The amendment made by St. 1973, c. 1123, applies to causes of action occurring on and after January 1, 1974, and hence is not relevant here. The amendment changed the comparative negligence statute in material respects, including the abolition of the defense of assumption of risk in such cases. See 1973 Ann. Survey Mass. Law §§ 11.12-11.13, at 319-322 (1974).