BARBARA KING *vs.* G & M REALTY CORPORATION.

Suffolk.     October 5, 1977. — November 16, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Negligence,* One owning or controlling real estate.  *Landlord and Tenant,* Common stairway, Landlord's liability to tenant or one having his rights, Tenancy at will, Tenancy at sufferance.

A landlord owes a duty of reasonable care in maintaining areas retained under his control to a tenant regardless of the condition of the areas at the time of the letting.  [660-662]
The nature of a tenancy with respect to a landlord's tort liability was not altered by the tenant's receipt of a notice to quit under the provisions of G. L. c. 186, § 12.  [663-664]

TORT.   Writ in the Superior Court dated May 9, 1968.
On transfer to the Municipal Court of the City of Boston and retransfer to the Superior Court, the action was tried before *Mitchell,* J.
After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.
*Philip W. Riley* for the defendant.
*Thomas B. Shea* for the plaintiff.

KAPLAN, J.   Upon trial in the Superior Court in February, 1976, the plaintiff Barbara King won a verdict and judgment against the defendant G & M Realty Corporation on the ground of the defendant's negligence.
The plaintiff testified that in April, 1968, she was the tenant with her four children in a first-floor apartment at

57 Templeton Street, in the Dorchester district of Boston. A rear stairway served all six apartments of the three-story building. At 7:30 A.M. on April 26, 1968,[1] the plaintiff, carrying rubbish from her apartment, started to go down the stairs from the first floor. A top stair had sprung loose. A nail protruded from it. The plaintiff's slipper caught on the nail and she fell down the stairs onto a cement walk at street level, suffering injuries. A railing that she might have seized to prevent or break the fall was "gone."

The plaintiff said that over a period of some months preceding the accident she had complained repeatedly to the defendant, owner of the building, about the condition of the stairs, but it had not done anything about it. She also testified that the stairs had been in satisfactory condition in 1963, when she first moved into the apartment.

On cross-examination, the defendant suggested that there was contributory negligence in that the plaintiff, knowing as she stated that the stairs were defective, had used them rather than the front stairs available from all the apartments. The plaintiff admitted receiving from the defendant on April 15 a written fourteen-day notice to quit for failure to pay rent. She continued living in the apartment and caught up with rent arrears in June. She moved elsewhere, voluntarily, sometime in the fall of 1968.

On this appeal[2] the defendant argues that the judge should have granted its motion for judgment[3] for the principal reason that, upon receipt of the notice to quit on April

---

[1] The unfortunate delay in reaching decisive trial is explained only in part by the fact that the action, first entered in the Superior Court, was transferred to the Municipal Court of the City of Boston, tried there to a judgment for the plaintiff, reversed on a point of law by the Appellate Division, and then returned to the Superior Court for jury trial.

[2] After the appeal was lodged in the Appeals Court, we took it pursuant to G. L. c. 211A, § 10 (A).

[3] The defendant moved for a directed verdict at the close of the plaintiff's case. The motion was denied. The defendant then put in a very brief case. After verdict, it moved for judgment, which was denied. Technically, the motion at the close of the plaintiff's case did not sur-

15, the plaintiff became a tenant "at sufferance," and thereupon was owed a duty on the defendant's part only to refrain from wilful or wanton conduct in respect to maintaining the safety of the common stairway. The defendant also excepted to the judge's instruction to the jury which cast on the defendant a general, continuing duty toward the plaintiff to exercise reasonable care in keeping the stairway in safe condition.

1. It is convenient first to consider the case apart from the question of the effect of the notice to quit. In the past it was the law of the Commonwealth that a landlord had no general obligation to exercise reasonable care in keeping safe the common areas of an apartment building or similar structure for use by his tenants and their visitors. Rather he was under a separate and limited duty toward each tenant and that tenant's visitors to exercise reasonable care to maintain the common areas in a condition not less safe than they were, or appeared to be in, at the time of the letting to the particular tenant. See *McCarthy* v. *Isenberg Bros.*, 321 Mass. 170, 172 (1947); *Mirick* v. *Galligan*, 372 Mass. 146, 148, 149 (1977). This was a singular Massachusetts rule; the "weight of authority" was otherwise and imposed on the landlord the general, continuing duty mentioned.[4] In *Lindsey* v. *Massios*, 372 Mass. 79, 82 (1977), we repented of one phase, at least, of our old rule and joined the current of authority in a situation where it was a guest of a tenant who was suing the landlord for an injury suffered through the negligent

---

vive because not followed up by a motion for a directed verdict at the close of all the evidence, see *Martin* v. *Hall*, 369 Mass. 882, 884 (1976), and the later motion for judgment was out of order for the same reason, see Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974); but as the case the defendant put in was inconsequential, and the judge received and ruled on the later motion, we are content to review the point of law sought to be raised. That point, indeed, inheres in the judge's instruction which we review on the defendant's exception.

[4] The authorities are thus evaluated in the note of the American Law Institute's reporter referred to at note 8 *infra;* and see W. Prosser, Torts § 63, at 405-408 (4th ed. 1971); 2 F. Harper & F. James, Torts § 27.17 (1956).

maintenance of a common stairway. We saw this result as a corollary of a series of decisions since *Boston Hous. Auth.* v. *Hemingway,* 363 Mass. 184 (1973),[5] and relied in particular on the policy underlying *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), which, as we said in *Lindsey,* announced "a new rule that occupiers owe a duty of reasonable care to all lawful visitors without regard to their common law status as invitees or licensees." *Id.* at 82. With respect to areas retained in the landlord's control, the landlord may be viewed as in effect an "occupier."

The *Lindsey* decision left open the case where the tenant, rather than the guest, was the injured party suing the landlord. See the reservation in *Lindsey* at 82 n.2; also *Mirick, supra* at 148. The present case is the one reserved. We think the measure of the landlord's responsibility to the tenant with respect to common areas left in the landlord's control should not differ in kind from that owed by the landlord to the tenant's visitors. A contrary view creating dual standards of care by distinguishing the tenant from the visitor, and fixing the landlord's duty to the former in relation to conditions at the time of letting, would place just that undue emphasis on the "conveyance" and "caveat emptor" aspects of a lease which we were at pains to criticize in the *Hemingway* case.[6] In the present context the tenant is not different from the visitor except as he may the more readily have or be chargeable with knowledge of a dangerous condition of a common area

---

[5] The series of cases includes, besides the *Hemingway* case, *Mounsey* v. *Ellard,* 363 Mass. 693 (1973); *DiMarzo* v. *S. & P. Realty Corp.,* 364 Mass. 510 (1974); *Bouchard* v. *DeGagne,* 368 Mass. 45 (1975); *Perry* v. *Medeiros,* 369 Mass. 836 (1976); *Lindsey* v. *Massios,* 372 Mass. 79 (1977); *Mirick* v. *Galligan,* 372 Mass. 146 (1977).

In New Hampshire the court, instead of continuing to reformulate the landlord's tort liability by successive steps, has now indicated that ordinary principles of tort liability ought to apply to landlords as to other persons. *Sargent* v. *Ross,* 113 N.H. 388 (1973) (Kenison, C.J.).

[6] Note that the implied warranty of habitability, found in the *Hemingway* case to attach to a residential tenancy, is a continuing one, comparable to the continuing duty of reasonable care we find in the present case.

— a factor bearing on contributory negligence. We add here the several practical considerations arising from the situation of residential tenants that lead us to favor the application to them of the rule which now prevails in this country as against the rule earlier recognized in the Commonwealth. "Besides the inherent difficulties of trying to determine in retrospect the condition of the area in question as of the beginning of the tenancy [as noted, the tenancy in the present case began thirteen years before trial], the 'Massachusetts rule' is unfair to tenants who might be unaware of the true condition of the areas retained under the landlord's control. Furthermore, if the tenant becomes aware of a pre-existing dangerous condition after the tenancy has begun, he has no recourse against the landlord to force repairs and must bear the expense and consequences of any resulting injury.[7] The landlord should not be allowed to remain in such a position that he has no incentive to maintain the areas retained under his control in reasonably safe condition. . . . [T]he point in time at which the dangerous condition came into existence is only important as a factor in determining whether the landlord could have discovered the condition by the exercise of reasonable care and whether he has had a reasonable time to make it safe."[8]

---

[7] In a multitenant apartment house, the tenants for self-protection would have to agree among themselves to make repairs and their problem would be aggravated by the fact that the landlord's duties toward them might differ, depending on the several dates of letting. Cf. Harkrider, Tort Liability of a Landlord, 26 Mich. L. Rev. 383, 401-404 (1928).

[8] The quoted passage is taken from the Reporter's note to Restatement (Second) of Property — Landlord & Tenant § 17.3, at 209 (1977). Section 17.3 reads as follows: "A landlord who leases a part of his property and retains in his own control any other part the tenant is entitled to use as appurtenant to the part leased to him, is subject to liability to his tenant and others lawfully upon the leased property with the consent of the tenant or a subtenant for physical harm caused by a dangerous condition upon that part of the leased property retained in the landlord's control, if the landlord by the exercise of reasonable care could have: (1) discovered the condition and the unreasonable risk involved therein; and (2) made the condition safe."

2. The trial judge was thus correct in charging the jury as he did.[9] There was no basis for allowing the motion for judgment, questions of negligence and contributory negligence being plainly for the jury, unless the notice of April 15 should alter the result. It is suggested that from that day forward the plaintiff lost her status as a tenant at will and, becoming a tenant at sufferance, should enjoy not even the rights of a lawful visitor. We think it would make sense to read the statute under which the notice was given, G. L. c. 186, § 12,[10] as not "determining" the original tenancy for the present purpose — i.e., as not altering the nature of the tenancy with respect to the tort obligation — until the lapse of the fourteen days (the rent due not

---

[9] Our present ruling on landlord's duties is retroactive to the extent indicated in *Bouchard* v. *DeGagne,* 368 Mass. 45 (1975). The trial judge's instruction anticipated our ruling.

An indication of legislative policy consistent with our ruling may be found in G. L. c. 186, § 19, inserted by St. 1972, c. 665, a statute not discussed by the parties. Section 19 provides in part: "A landlord or lessor of any real estate except an owner-occupied two- or three-family dwelling shall, within a reasonable time following receipt of a written notice from a tenant forwarded by registered or certified mail of an unsafe condition, not caused by the tenant, his invitee, or any one occupying through or under the tenant, exercise reasonable care to correct the unsafe condition described in said notice except that such notice need not be given for unsafe conditions in that portion of the premises not under control of the tenant. The tenant or any person rightfully on said premises injured as a result of the failure to correct said unsafe condition within a reasonable time shall have a right of action in tort against the landlord or lessor for damages." See D.R. Simpson & H.J. Alperin, Summary of Basic Law § 1090, at 661 (2d ed. 1974).

[10] Section 12, as amended through St. 1974, c. 320, § 2, provides in part: "Estates at will may be determined by either party by three months' notice in writing for that purpose given to the other party; and, if the rent reserved is payable at periods of less than three months, the time of such notice shall be sufficient if it is equal to the interval between the days of payment or thirty days, whichever is longer. In case of neglect or refusal to pay the rent due from a tenant at will, fourteen days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the tenancy; provided, that the tenancy of a tenant who has not received a similar notice from the landlord within the twelve months next preceding the receipt of such notice shall not be determined if, within five days after the receipt thereof, he pays or tenders to the landlord the full amount of rent due."

having been paid by the fifth day).[11] We need not rest on the circumstance that here the notice evidently had only a minatory purpose; it was not followed up, as far as appears, by legal action on the part of the landlord, and the rent was in fact finally made good. But if § 12 should be interpreted differently, and the original tenancy is taken to have ended on receipt of the notice (or on the fifth day thereafter), we would hesitate to say that the tenant became thereby the equivalent of a trespasser with narrow rights. Cf. *Mounsey* v. *Ellard,* 363 Mass. 693, at 707 n.7 (1973); but cf. Kaplan, J., concurring, at 717. As the tenant could remain on the premises for fourteen days safe from dispossession, we would suppose, by reference to the reasoning of the *Mounsey* case, that he should not be degraded below the rank of a lawful visitor. We need not delve into the law of tenancies at sufferance except to note that even at common law such a tenant was not a trespasser but a "licensee," if only a "bare" one,[12] and that the effect of modern legislation may well be to give him a more honorific status than that.[13]

*Judgment affirmed.*

---

[11] *Margosian* v. *Markarian,* 288 Mass. 197 (1934), under an earlier version of the statute, is not inconsistent with this reading. The tenant there was treated as a tenant at sufferance, but the accident occurred after the fourteenth day and the landlord on that day had commenced proceedings to recover possession. (An amendment of the headnote to the *Margosian* case appearing under "Corrections" in 289 Mass. is not explained or instructive.) Cf. *Oakes* v. *Munroe,* 8 Cush. 282 (1851); *Ullian* v. *Les Tuileries, Inc.,* 361 Mass. 863 (1972).

[12] See *Margosian* v. *Markarian,* 288 Mass. 197, 199 (1934).

[13] Thus G. L. c. 186, § 3, reverses the common law position by requiring that a tenant at sufferance pay rent; and see § 12 at note 10 *supra.*