WILLIAM EVERETT, JR. vs. BUCKY WARREN, INC. &
another
.(and a companion case).

Suffolk. February 17, 1978. — September 5, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Negligence,* Manufacturer, Hockey helmet, Assumption of risk, Con-
tributory, Defective product. *Conflict of Laws. Practice, Civil,* Spe-
cial questions to jury. *Evidence,* Relevancy and materiality; Opin-
ion: expert.

At the trial under Rhode Island law of actions for injuries sustained
by a hockey player of a preparatory school when struck in the head
by a puck shot by an opposing player which entered a gap in the
three sections of the injured player's helmet, evidence that the
manufacturer of the helmet designed it for ease of adjustment and
not for safety, that he knew a puck could penetrate between the
sections, and that he was aware one-section helmets were manufac-
tured by others but made no safety tests warranted a conclusion
that he was negligent with respect to its design [287]; a conclusion
of negligence on the part of the school in supplying the helmet to
the injured player was warranted by evidence that its experienced
coach knew of the availability of one-section helmets and conceded
them to be safer than the three-section helmet [287–288].
Gaps in a three-section helmet worn by a hockey player were not so
large or so obvious as to require a conclusion, as matter of law under
Rhode Island law, that he assumed the risk of injury from a puck
shot through a gap by an opposing player, and assumption of risk
was not a bar to liability of the manufacturer of the helmet, or of
the retailer, or of the preparatory school which supplied the helmet
[288–289]; no exceptional circumstances would have justified a rul-
ing in behalf of the manufacturer that as matter of law the injured
player was contributorily negligent [289–290].
Findings, under the law of strict tort liability adopted in Rhode Island,
that the three-section design of a hockey helmet, with gaps, was
defective and "unreasonably dangerous," and that the manufactur-
er and retailer of the helmet were liable to a hockey player struck

in the head by a puck shot by an opposing player, were warranted by substantial evidence, including evidence that safer one-section helmets were manufactured prior to the accident and were not economically unfeasible. [290–291]

At the trial for injuries sustained by a hockey player, who was wearing a three-section helmet when struck in the head by a puck which entered a gap in the sections, against the retailer who had sold the helmet to the defendant preparatory school which supplied the helmet to the player, there was no error in the trial judge's refusal to submit a special question to the jury as to the retailer whether when injured the player was wearing its helmet where special questions answered as to negligence and causation necessarily encompassed the question refused [291–292]; there was no error, under strict liability counts, as to the school in the admission in evidence of its coach's comparison as to safety of the three-section helmet and one-section helmets available, and of the relative cost of the two helmet types [292].

Opinions of a neurosurgeon, carefully limited to a neurological point of view, as to the relative safety in design of the three-section helmet worn by a hockey player when hit in the head by a puck and a one-section helmet available and of the causal relationship between the injury and the helmet worn, were properly admitted in evidence in tort actions by the injured player. [293–294]

Two ACTIONS OF TORT. Writs in the Superior Court dated October 15, 1970, and February 17, 1971, respectively. The actions were tried before *Morse,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas E. Connolly* for the plaintiff.

*David W. Kelley* for George Whittie, executor.

*John B. Johnson* for Bucky Warren, Inc.

*John F. Finnerty* for the New Preparatory School, Inc.

QUIRICO, J. In this case the plaintiff seeks damages from the suppliers of a protective helmet he was wearing when, while playing in a hockey game, he was struck in the head by a puck and was seriously injured. The question before us is whether, on the various counts brought under both negligence and strict liability theories,[1] the

_____

[1] The complaints also sought recovery from two of the defendants for breach of implied and express warranties of merchantability and

evidence was sufficient to support the verdicts for the plaintiff.

We summarize the evidence that is most favorable to the plaintiff. *Alholm* v. *Wareham*, 371 Mass. 621, 626-627 (1976). *Kelly* v. *Railway Express Agency, Inc.*, 315 Mass. 301, 302 (1943).[2] The controversies in this case revolve around the design of the protective helmet worn by the plaintiff when he was injured. It is described as a three-piece helmet because its protective components are three sections of high-impact plastic lined on the inside with shock foam. One piece covers the back of the head, extending from the nape up about six inches, and running horizontally between positions slightly behind each ear; the second piece, approximately two inches wide, rings the front of the head from the same positions, thus covering the forehead; and the third piece joins the tops of these two sections and covers the top of the head. This top piece is loosely connected to the other two sections by six strips of leather, each 1½ to 1¾ inches in width and 1½ to 2 inches in length. The side pieces are linked by a ¾ inch wide elastic strap, whose length is adjustable. The result of this three-piece design and loose method of linking the sections is that there are gaps within the helmet where no plastic piece covers. The gap between the top piece and the two side pieces ranges from ½ to ¾ of an inch. The gaps between the two side pieces vary with the size of the wearer's head and the tension with which the elastic straps are adjusted, and range from zero to ¾ of

---

fitness for use in the sale of the helmet. These counts were discontinued prior to trial. The counts alleging damages suffered by the plaintiff's father were also discontinued as a result of the stipulation of counsel in open court that all damages were to be awarded to the plaintiff William Everett, Jr.

[2] As discussed *infra*, the law of Rhode Island controls the substantive issues in this case. We look to the law of this Commonwealth, however, for the standard to be used in judging the sufficiency of the evidence to support a verdict. *Weir* v. *New York, N.H. & H.R.R.*, 340 Mass. 66, 69 (1959). *Peterson* v. *Boston & Me. R.R.*, 310 Mass. 45, 47 (1941). Restatement (Second) of Conflict of Laws § 135 (1971).

an inch. This three-piece design, characterized by the internal gaps, was somewhat unique, and there were available at the time of the plaintiff's injury and for some time prior thereto helmets that were designed as one-piece units and were therefore without such gaps.

When the injury occurred the plaintiff, who was approximately nineteen years old, was a post-graduate student and a member of the hockey team at the defendant New Preparatory School (New Prep) in Cambridge, Massachusetts. On January 10, 1970, the New Prep team went to Providence, Rhode Island, to play the Brown University freshman team. During the game the plaintiff, a defenseman, attempted to block the shot of a Brown player by throwing himself into a horizontal position on the ice, about ten to fifteen feet in front of the shooting player and perpendicular to the intended line of flight of the puck. The puck struck the plaintiff above and slightly back from his right ear, and penetrated into the gap of the helmet formed where the three helmet sections came together. As a result of this penetration the puck hit his head and caused a fracture of the skull. This serious injury subsequently required that a plate be inserted in the plaintiff's skull, and caused the plaintiff to have headaches that will continue indefinitely.

The helmet was being worn by the plaintiff on the night of his injury as a result of its being supplied to him through the following process. The helmet was manufactured by J. E. Pender (Pender), a proprietorship engaged in the manufacture of sporting goods and represented in this action by the defendant George Whittie, executor of the will of James E. Pender.[3] In 1967 through 1969 Pender sold at least fourteen helmets of the type worn by the plaintiff to the defendant Bucky Warren, Inc. (Bucky

---

[3] The plaintiff originally commenced his action against James E. Pender, the proprietor of J. E. Pender. Pender died before the action was tried, however, and a substitute complaint was filed naming George Whittie, the executor of Pender's estate, as defendant. This defendant will be referred to here as Pender.

Warren), a retailer in sporting goods, which in turn sold them to New Prep. The helmets had been specially ordered by Owen Hughes, the coach of the New Prep team, who was the person authorized by the school to make such purchases. They were painted in the colors of the school to match the team uniforms. Each player on the plaintiff's team was supplied with one of these helmets for practice and games use, although Hughes's testimony indicated that, had a player so wished, he could have worn a different helmet of his own choosing. Rather than purchasing his own helmet, the plaintiff chose to wear the one supplied to him by the school authorities.

The plaintiff brought this action[4] claiming that, because of the gaps, the Pender helmet was defectively designed, and that therefore all three defendants, Pender, Bucky Warren, and New Prep, were liable to him in negligence for supplying him the helmet, and that the defendants Pender and Bucky Warren were also liable to him in tort on a strict liability theory. At trial, motions for directed verdicts were denied, and fourteen special questions were submitted to the jury. The jury found that all three defendants were negligent, that the helmet was not in a reasonably safe condition when sold by Pender and Bucky Warren, that the plaintiff's injury was caused by the condition of the helmet and the negligence of the defendants, and that the plaintiff himself neither assumed the risk of the injury nor was contributorily negligent.[5] The plaintiff was awarded $85,000 in damages.

---

[4] The plaintiff filed two actions in this case, one, in October, 1970, against the defendants Bucky Warren and New Prep in the Superior Court for Suffolk County, the second in February, 1971, in the Superior Court for Middlesex County against the defendant James E. Pender. The two cases were consolidated for trial in the Superior Court for Suffolk County.

A third-party action was also filed by the defendant Pender against the defendant New Prep. At the conclusion of the trial this action was dismissed.

[5] The questions submitted to the jury, and their answers, were as follows:

After proper motions the judge, notwithstanding the jury verdicts, entered judgments in favor of all defendants on the negligence counts, holding that, as matter of law, the plaintiff assumed the risk of his injury. He entered judg-

Q. "1—Was the late James E. Pender negligent?"
A. "Yes."
Q. "2— . . . Was such negligence on the part of the late James E. Pender a cause of the injury to the Plaintiff, William Everett, Jr?"
A. "Yes."
Q. "3—Was the Defendant, Bucky Warren, Inc., negligent?"
A. "Yes."
Q. "4— . . . Was the negligence on the part of the Defendant, Bucky Warren, Inc., a cause of the injury to the Plaintiff, William Everett, Jr.?"
A. "Yes."
Q. "5—Was the Defendant, New Preparatory School, Inc., negligent?"
A. "Yes."
Q. "6— . . . Was the negligence on the part of the Defendant, New Preparatory School, Inc., a cause of the injury to the Plaintiff, William Everett, Jr.?"
A. "Yes."
Q. "7—Was the Plaintiff, William Everett, Jr., negligent?"
A. "No."
Q. "8— . . . Was [the Plaintiff's] negligence a cause of [his] injury . . .?"
A. No answer.
Q. "9—Did the Plaintiff, William Everett, Jr., voluntarily and knowingly assume the risk of his injury?"
A. "No."
Q. "10—Was the hockey helmet when it was sold by James E. Pender reasonably safe for its intended use as a hockey helmet?"
A. "No."
Q. "11— . . . Was the lack of reasonable safety a cause of the injury to the Plaintiff, William Everett, Jr.?"
A. "Yes."
Q. "12—Was the hockey helmet when it was sold by Bucky Warren, Inc., reasonably safe for its intended use as a hockey helmet?"
A. "No."
Q. "13— . . . Was the lack of reasonable safety a cause of the injury to the Plaintiff, William Everett, Jr.?"
A. "Yes."
Q. "14— . . . What amount of money, if now paid in cash, will fairly and reasonably compensate the Plaintiff, William Everett, Jr., for his damages caused by the injury sustained by him on January 10, 1970?"
A. "Eighty five thousand dollars and no cents ($85,000)."

ment for the plaintiff for $85,000 on the strict liability counts, however, on the ground that assumption of the risk was not a defense to this cause of action. Appeals and cross-appeals were claimed,[6] and we granted an application for direct appellate review. G. L. c. 211A, § 10 (A).

The issues raised here are whether there was sufficient evidence for the jury to find that: (a) the defendants Pender and New Prep were negligent,[7] (b) the plaintiff was not negligent and did not assume the risk of his injury, and (c) the helmet was defective and unreasonably dangerous as sold by Pender and Bucky Warren. Additionally, we address certain evidentiary and procedural matters raised by the defendants.

Before proceeding to a discussion of the substantive questions raised, we address briefly a choice of law problem argued before us by the defendant Pender. Since the injury occurred in Rhode Island, the trial judge, relying on *Brogie* v. *Vogel*, 348 Mass. 619, 621 (1965), applied the law of that State to the case. It is argued here that the more recent cases of *Saharceski* v. *Marcure*, 373 Mass. 304 (1977), and *Pevoski* v. *Pevoski*, 371 Mass. 358 (1976), require that the law of this Commonwealth be applied, since the domicil of all the parties is Massachusetts and the helmet was manufactured and sold here. Pender, however, did not raise this question at the trial, and therefore we will not address it on appeal. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974); cf. *Commonwealth* v. *Johnson*, 374 Mass. 453, 465 (1978). Pursuant to Mass. R. Civ. P. 44.1, 365 Mass. 809 (1974), the plaintiff gave notice

---

[6] The defendants Pender and Bucky Warren appealed the judgments against them on the strict liability counts, and the plaintiff cross appealed against each for the failure to enter judgment for him on the negligence counts. The plaintiff also appealed from the judgment entered in favor of New Prep on the negligence count, and New Prep cross appealed, challenging certain evidentiary and procedural rulings of the trial judge.

[7] The defendant Bucky Warren does not argue in its brief that there was insufficient evidence for the jury to find it negligent.

before trial that he intended to seek the application of Rhode Island law. The case was then tried on a theory of strict liability consistent with Rhode Island decisions. No objections were made at the time by Pender. A motion for a directed verdict was made but, contrary to the assertion of counsel at oral argument, it does not challenge the applicability of Rhode Island law. We therefore apply the law of Rhode Island to the substantive issues of this case. See 5A Moore's Federal Practice par. 51.04, at 2507 (2d ed. 1977).

1. *Negligence.* "A manufacturer is under a duty to use reasonable care to design a product that is reasonably safe for its intended use." W. Prosser, Torts § 96, at 645 (4th ed. 1971). *Kelly* v. *Ford Motor Co.*, 110 R.I. 83, 85 (1972). *Ritter* v. *Narragansett Elec. Co.*, 109 R.I. 176, 186 n.3 (1971). *Back* v. *Wickes Corp.*, 375 Mass. 633, 643 (1978). The Pender helmet was designed by James E. Pender, who possessed no engineering background. It was intended to protect the vital areas of the head, the temples and cranium. It was designed in three pieces, however, not for safety reasons, but to facilitate adjustment. Pender indicated in his deposition—he was deceased at the time of trial—that the helmet was consciously designed so that there would be gaps between its sections when it was properly adjusted; the larger the head of the wearer, the larger would be the gaps. The jury could reasonably have concluded from the examination of the helmet that Pender knew, or should have known, that a puck could penetrate between the sections and cause serious injury to the wearer. Pender was aware that other manufacturers were producing helmets of a one-piece design, but he nevertheless failed to make any tests of his own helmet to determine its safety. We hold that this evidence was sufficient to support the answer of the jury that Pender was negligent in the design of the helmet.

We reach a similar conclusion with regard to the defendant New Prep. As stated in its brief, the issue with regard to New Prep is whether "it was bad practice for a

hockey coach to supply the [p]laintiff with the helmet in question and [whether] the supplying of said helmet to the [p]laintiff was causally related to his injuries." As to the claim of lack of causation we see no serious question; the jury could clearly have concluded that the presence of the gaps in the helmet was the cause of his injury. The more substantial issue here is whether the jury were warranted in finding that New Prep, through its agent, Coach Owen Hughes, was negligent in supplying the helmet to the plaintiff. As a supplier New Prep was required to exercise reasonable care not to provide a chattel which it knew or had reason to know was dangerous for its intended use. See Restatement (Second) of Torts § 388 (1965). Hughes, as a person with substantial experience in the game of hockey, may be held to a higher standard of care and knowledge than would an average person. Restatement (Second) of Torts § 289(b), Comment m (1965). W. Prosser, *supra,* § 32, at 161. See *Ritter, supra* at 182-183. Since many of the teams that New Prep played prior to 1970 wore one-piece helmets, the jury could have found that Hughes knew, or should have known, of their availability. He conceded in his testimony that the one-piece helmets were safer than the Pender model since the gaps in the latter would allow for the penetration of a puck. There was sufficient evidence to permit the jury to decide whether, in these circumstances, the supplying of the helmet to the plaintiff was negligent conduct.

Having determined that the jury were warranted in finding negligence on the parts of the defendants, we turn now to a consideration of the defenses of assumption of the risk and contributory negligence. Unlike contributory negligence, assumption of the risk involves a subjective standard, keyed not to the knowledge or understanding of the hypothetical reasonable man, but to "what the particular plaintiff in fact sees, knows, understands and appreciates." *D'Andrea* v. *Sears, Roebuck & Co.,* 109 R.I. 479, 487 (1972), quoting from Restatement (Second) of Torts § 496D, Comment c (1965). *Kennedy* v. *Providence*

*Hockey Club, Inc.,*     R. I.     ,[a] (1977). In order to rule
that a plaintiff assumed the risk of his injury as matter
of law, the facts must be so plain that reasonable men
could draw only one inference. *Kennedy, supra* at     .[b]
The facts here are not so plain. The plaintiff testified that
he did not know of any dangers that he was exposed to by
wearing the helmet. He believed, he said, that it would
protect his head from injury. The helmet had been sup-
plied to him by a person with great knowledge and experi-
ence in hockey, a person whose judgment the plaintiff
had reason to trust, and it was given to him for the pur-
pose implied, if not expressed, of protecting him. On the
other hand, the obviousness of the gaps in the helmet
would support an inference that he was actually aware of
the risks he ran. It was on this basis that on the negli-
gence counts the judge entered judgments for the defend-
ants notwithstanding the verdicts for the plaintiff. But
we do not think that these gaps were so large or so obvi-
ous as to require the conclusion, as matter of law, that the
plaintiff possessed the awareness necessary to support an
assumption of the risk defense. Rather it was the function
of the jury to balance the obviousness of the helmet de-
sign against the plaintiff's testimony and the circum-
stances in which he received the helmet in order to arrive
at a conclusion as to what the plaintiff knew at the time
of the injury. That he knew that the game of hockey
carries with it certain other risks, such as being hit in his
unprotected face, is not relevant to this issue; the ques-
tion is whether the plaintiff appreciated the risk of the
injury that befell him.

   The defendant Pender alone argues that this court
should rule that the plaintiff was contributorily negli-
gent as matter of law. Pender's brief, however, provides
us with little factual or legal support for this claim. We
note simply that the question of contributory negligence

------

   [a] 376 A.2d 329, 332 (1977).
   [b] 376 A.2d at 333.

is rarely to be taken from the jury and decided as matter of law, *Mirick* v. *Galligan*, 372 Mass. 146, 151 (1977); *Halley* v. *Hugh Nawn, Inc.*, 356 Mass. 28, 30 (1969); *Robitaille* v. *Brousseau*, 115 R.I. 27, 32 (1975), and we find no exceptional circumstances in this case that would justify such an an action.

2. *Strict liability in tort.* In *Ritter* v. *Narragansett Elec. Co.*, 109 R.I. 176, 188 (1971), the Supreme Court of Rhode Island adopted the law of strict liability in tort as it is defined in the Restatement (Second) of Torts § 402A (1965).[8] The plaintiff claims that the three-piece design of the Pender helmet, with the gaps in it, was defective and unreasonably dangerous as defined in the Restatement, and therefore that the manufacturer and retailer are liable to him. We hold that there was sufficient evidence to reach the jury on this theory. For a product to be in a defective condition it does not have to be the result of errors made during the manufacturing process; it is defective as well "when it is properly made according to an unreasonably dangerous design" and does not meet a consumer's reasonable expectation as to its safety. W. Prosser, Torts § 99, at 659 (4th ed. 1971). *Ritter* v. *Narragansett Elec. Co., supra* at 190. *Back* v. *Wickes Corp.*, 375 Mass. 633, 642 (1978). The focus is on the design itself, not on the manufacturer's conduct. Factors that should be weighed in determining whether a particular product is reasonably safe include "the gravity of the danger posed by the challenged design, the likelihood that such danger

---

[8] Section 402A provides: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

would occur, the mechanical feasibility of a safer alternative design, the . . . cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Back, supra* at 642, quoting from *Barker* v. *Lull Eng'r Co.*, 20 Cal. 3d 413, 431 (1978). In this case the gravity of the danger posed by the three-piece design was demonstrated by the injuries to the plaintiff. There was substantial evidence that tended to show that helmets of the one-piece design were safer than the Pender model, that these one-piece helmets were in manufacture prior to the plaintiff's injury, and that, while more expensive than the Pender helmets, they were not economically unfeasible. This evidence provided a sufficient basis for the jury's findings that the helmet was "unreasonably dangerous."

The defendants also argue that the plaintiff is barred from recovery on the strict liability counts because he assumed the risk of injury. In view of our holding earlier in this opinion that the jury were warranted in finding that the plaintiff had not assumed the risk, we need not decide whether assumption of the risk would be a defense to a strict liability claim under Rhode Island law. See *Kennedy* v. *Providence Hockey Club, Inc.*, R.I. , (1977);[c] Restatement (Second) of Torts § 402A, Comment n (1965).

3. *Miscellaneous issues.* (a) Bucky Warren argues that it was prejudicial error for the judge to refuse to submit to the jury the following special question: "At the time of the injury to the plaintiff William Everett, Jr., was he wearing a hockey helmet sold by the defendant Bucky Warren, Inc.?" The nature, scope, and form of special questions submitted to a jury pursuant to Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), are matters within the discretion of the trial judge. *R.H. Baker & Co.* v. *Smith-Blair, Inc.*, 331 F.2d 506, 508 (9th Cir. 1964). *Scott* v. *Isbrandtsen Co.*, 327 F.2d 113, 119 (4th Cir. 1964). 9 C.A. Wright & A.R.

[c] 376 A.2d 329, 333 (1977).

Miller, Federal Practice and Procedure § 2506, at 498-500 (1971). It is not error for a judge to refuse to submit a special question where the issue is adequately covered by another question. *Perzinski* v. *Chevron Chem. Co.*, 503 F.2d 654, 660 (7th Cir. 1974). 9 C.A. Wright & A.R. Miller, *supra* at 500. Here the jury were asked whether Bucky Warren was negligent, whether the helmet was in a reasonably safe condition when it was sold by Bucky Warren, and whether these two occurrences caused the plaintiff's injury. We think that these questions necessarily encompass the issue whether Bucky Warren sold the helmet that the plaintiff was wearing when he was hurt. Therefore there was no error in the judge's refusal to submit that question separately to the jury.

(b) The defendant New Prep contends that it was error for the judge to admit in evidence certain testimony of Hughes, the plaintiff's coach at New Prep, who is now also the owner of a business dealing in hockey equipment. Specifically New Prep objects to the admission of Hughes's testimony (1) that he could have acquired one-piece helmets for New Prep prior to the plaintiff's injury, and (2) that it was his present opinion that the one-piece helmets were safer than the Pender helmet. This evidence, it is claimed, was irrelevant because it dealt with Hughes's current knowledge and opinions rather than those he held at the time of the injury. The testimony, however, was clearly relevant to the issue of reasonable safety of the Pender helmet under the strict liability counts, since on this issue the jury are entitled to compare the challenged product with alternative, feasible designs. *Back* v. *Wickes Corp.*, 375 Mass. 633, 642 (1978). For the same reasons evidence of the relative costs of the two helmet types was properly admitted. Since this evidence was admissible for one purpose, and no limiting instruction was requested, there was no error. *Green* v. *Richmond*, 369 Mass. 47, 58-59 (1975). *Commonwealth* v. *Corcione*, 364 Mass. 611, 620 (1974). *Commonwealth* v. *Pinnick*, 354 Mass. 13, 16-17 (1968). *Curtin* v. *Benjamin*, 305 Mass. 489, 493-494 (1940).

New Prep further argues that its question to Hughes, as to whether a player who attempts to block a puck with his head is assuming a great risk of injury, was wrongly excluded because later testimony showed that the plaintiff did just that. Without deciding whether this claim as to the later testimony is accurate, we hold that there was no error, since when the evidence was excluded no request was made to admit it on the condition that the supporting fact be later proven. 6 J. Wigmore, Evidence § 1871, at 667 (Chadbourn rev. 1976). See *H.H. Hawkins & Sons* v. *Robie*, 338 Mass. 61, 66 (1958); *Shinners* v. *Proprietors of Locks & Canals on Merrimack River*, 154 Mass. 168, 171-172 (1891).

A final contention regarding Hughes's tesimony, that the plaintiff was impeaching his own witness, is also without merit. See G. L. c. 233, § 23.

(c) New Prep also argues that a model of a one-piece helmet was wrongly admitted against it because there was a lack of evidence showing that it was aware of that helmet before the plaintiff's injury. We hold, however, that there was sufficient evidence of the helmet's availability during this period to justify an inference that the school officials were aware, or should have been aware, of this helmet. Therefore there was no error.

(d) The defendants contend finally that the admission of certain opinions of a Dr. Thomas McOsker, one of the physicians who had treated the plaintiff, was error. Dr. McOsker had been a neurosurgeon since 1946; he specialized in head injuries and had extensive experience in sports medicine, particularly in evaluating protective equipment, including hockey and football helmets. The defendants do not challenge the qualifications of this witness. Rather, they assert that in his testimony he went beyond the scope of his expert knowledge and experience when he gave his opinion as to the relative safety of the one-piece and three-piece helmet design, the reasonable safety of the Pender helmet, and the causal relationship between the plaintiff's injury and his wearing the Pender

helmet. These opinions, however, were carefully limited to a neurosurgical point of view, both by the form of the questions asked and by limiting instructions given by the judge when the evidence was admitted. As so limited, the testimony was properly admitted. See *Louise Caroline Nursing Home, Inc.* v. *Dix Constr. Corp.*, 362 Mass. 306, 309 (1972); *Andrade* v. *Correia*, 358 Mass. 786, 788-789 (1971); *Kenney* v. *Sears, Roebuck & Co.*, 355 Mass. 604, 610 (1969). Nor was the admission error because the conclusion related to an ultimate issue of fact before the jury. *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 (1977).

4. The judgments on the strict liability counts are affirmed. The judgments on the negligence counts are reversed with instructions that judgments be entered on the verdicts.

*So ordered.*