# Norfolk & Dedham Mutual Fire Insurance Company *vs.* Ellen Morrison & others.[1]

Essex. January 5, 2010. - April 8, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Gants, JJ.

*Contract,* Lease of real estate, Indemnity, Insurance, Illegality. *Indemnity. Insurance,* Coverage, Insured, Insurer's obligation to defend, Liability insurance. *Landlord and Tenant,* Landlord's liabilities to tenant or one having his rights, Landlord's liability to third person. *Negligence,* One owning or controlling real estate.

This court concluded that G. L. c. 186, § 15, precluding a lessor from shifting responsibility for its own negligence to its lessee, is not limited in applicability to residential leases and therefore applies to commercial real property leases. [467-469]

A clause in a commercial real property lease, providing that as between the lessor and the lessee, the lessee shall be solely responsible for personal injuries and property damage occurring on the leased premises except for those resulting from the sole negligence of the lessor, violated G. L. c. 186, § 15, and was therefore void. [469]

In a civil action brought in Superior Court by the insurer of a lessee of commercial real property, seeking a judgment declaring that, inter alia, the plaintiff insurer did not have a duty under the lease to defend or indemnify the defendant lessor regarding a negligence claim that arose from an injury suffered by a visitor of the lessee, the judge erred in allowing a motion for summary judgment in favor of the insurer on the ground that the visitor's injury had occurred in a common area that the lessor was responsible for maintaining, where the record did not establish as a matter of law that the lessee owed no duty of care to the visitor. [469-470]

An agreement in a lease obligating a lessee to purchase liability insurance on a lessor's behalf (insurance provision) is distinct from an agreement that the lessee indemnify or hold harmless the lessor, and therefore, G. L. c. 186, § 15, does not apply to an insurance provision; for that reason, in a civil action, a Superior Court judge erred in allowing a motion for summary judgment by the plaintiff insurer of a lessee on the ground that an insurance provision on the defendant lessor's behalf was void. [470-474]

Civil action commenced in the Superior Court Department on April 14, 2008.

---

[1] Cummings Properties, LLC, OneBeacon Insurance Group, and Beverly Shafer.

The case was heard by *Timothy Q. Feeley*, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Peter G. Hermes* (*Adam J. Combies & Jeffrey P. Hermes* with him) for the defendants.

*Robert F. Feeney* (*Jenny I. Tibbetts* with him) for the plaintiff.

The following submitted briefs for amici curiae:

*Christopher A. Kenney, David R. Kerrigan, & Brian A. O'Connell* for Massachusetts Defense Lawyers Association.

*John Pagliaro & Martin J. Newhouse* for New England Legal Foundation & others.

*Myles W. McDonough, Anthony J. Antonellis, & Nicholas W. Schieffelin* for Frozen Four, LLC.

CORDY, J. The appeal in this declaratory judgment action requires us to determine whether two provisions in a commercial lease violate G. L. c. 186, § 15, a statute which, essentially, voids lease provisions that require tenants to indemnify landlords or exonerate them from liability for their own negligence. One of the provisions (liability provision) provides that as between the tenant and the landlord, the tenant is responsible for all injuries arising out of the use, control, condition, or occupancy of the leased premises, except those resulting from the "sole" negligence of the landlord. The other provision (insurance provision) requires the tenant to purchase general liability insurance for the benefit of the landlord with respect to injuries arising out of the condition of the leased premises or their use by the tenant. We conclude that the liability provision is void in part, and that the insurance provision does not violate the prohibitions in the statute.[2]

The case comes to us on appeal from the ruling of a Superior Court judge granting summary judgment to the tenant's insurer, essentially voiding the insurance provision and declaring that the insurer did not have a duty to defend, indemnify, or insure the landlord. The judge declined to void the liability provision,

---

[2]We acknowledge the amicus briefs of (1) Frozen Four, LLC, on behalf of Norfolk & Dedham Mutual Fire Insurance Company (Norfolk); (2) the Massachusetts Defense Lawyers Association; and (3) New England Legal Foundation, NAIOP Massachusetts, and the Real Estate Bar Association for Massachusetts on behalf of Cummings and OneBeacon.

ruling instead that it did not apply because the landlord was solely responsible for the area where the injury occurred, and any negligence would therefore be the "sole" negligence of the landlord. The landlord and its insurer appealed and we granted their application for direct appellate review. We reverse and remand to the Superior Court for proceedings consistent with this opinion.

1. *Background.* The following are undisputed facts from the summary judgment record.

Cummings Properties, LLC (Cummings), owns an office park in Beverly (complex). Dr. Beverly Shafer (Shafer) leases a suite for her medical office at the complex. Shafer and Cummings entered into a commercial lease for the medical office premises on July 1, 2006. Per the terms of the lease, the leased premises consist of approximately 3,996 square feet, plus a 15.4% share of the common areas. Shafer's liability insurer is Norfolk & Dedham Mutual Fire Insurance Company (Norfolk). Cummings's liability insurer is OneBeacon Insurance Group (OneBeacon).

On July 19, 2007, Ellen Morrison (Morrison), Shafer's patient, arrived at the complex for an appointment with Shafer. She parked her vehicle in the parking lot located on the east side of the complex, near the main entrance. The entrance to Shafer's office, where there is also a parking lot, is located on the west side of the complex. After getting out of her automobile and approaching the complex, Morrison alleges that she tripped and fell on a newly-constructed cement curb. Morrison brought a personal injury law suit in the Peabody Division of the District Court Department on February 15, 2008, alleging negligence on the part of Cummings and Shafer.[3] That lawsuit remains pending.

Thereafter, Cummings demanded that Shafer and Norfolk defend and indemnify Cummings in accordance with the provisions of the commercial lease agreement between Cummings and Shafer. Norfolk brought this action seeking a judgment declaring that the liability and insurance provisions of the commercial lease were void, and that it did not have a duty to defend or indemnify Cummings in the underlying matter.[4]

---

[3]The lawsuit also included claims against OneBeacon and Norfolk for violating G. L. c. 93A, and G. L. c. 176D, in their handling of the claim of Ellen Morrison (Morrison).

[4]Norfolk also sought a declaration that the business owners policy issued to

a. *The commercial lease between Cummings and Shafer.* Paragraph 16 of the lease, the liability provision, and par. 17, the insurance provision, relate to the allocation of risk through indemnification and insurance:

"16. LIABILITY. LESSEE shall be solely responsible as between LESSOR and LESSEE for deaths or personal injuries to all persons and damage to any property, . . . occurring in or on the leased premises (including any common areas as described below) and arising out of the use, control, condition or occupancy of the leased premises by LESSEE, except for death, personal injuries or property damage directly resulting from the sole negligence of LESSOR. LESSEE agrees to indemnify and hold harmless LESSOR and OWNER (as defined below) from any and all liability, including but not limited to costs, expenses, damages, causes of action, claims, judgments and attorney's fees caused by or in any way arising out of any of the aforesaid matters, except for death, personal injuries or property damage directly resulting from the negligence of LESSOR. All common areas, including but not limited to any parking areas, stairs, corridors, roofs, walkways and elevators (herein collectively called the common areas) shall be considered a part of the leased premises for liability and insurance purposes when they are used by LESSEE or LESSEE's employees, agents, callers or invitees.

"17. INSURANCE. LESSEE shall secure and carry at its own expense a commercial general liability policy insuring LESSEE, LESSOR and OWNER against any claims based on bodily injury (including death) or property damage arising out of the condition of the leased premises (including any common areas as described above) or their use by LESSEE, including damage by fire or other casualty, such policy to insure LESSEE, LESSOR and OWNER against any claim up to $1,000,000 for each occurrence involving bodily injury (including death), and $1,000,000 for each occurrence involving damage to property. This insurance shall be primary to and not contributory with any insurance carried by LESSOR, whose insurance shall

---

Dr. Shafer, on which Cummings is listed as an additional insured, did not afford coverage for the events alleged in Morrison's complaint. The judge did not reach this question; nor do we. It may properly be considered on remand.

be considered excess. LESSOR and OWNER shall be included in each such policy as additional insureds . . . and each such policy shall be written by or with a company or companies satisfactory to LESSOR. . . ."

b. *The Norfolk insurance policy.* Norfolk issued a business owners policy to Shafer as a named insured. The policy contains an indorsement and schedule that adds Cummings as an additional insured under the policy and states that the scope of the coverage is "only with respect to liability arising out of your ongoing operations or premises owned by or rented to you."[5,6]

2. *Discussion.* a. *Standard of review.* This case presents questions of law regarding statutory and contract interpretation. "We review questions of statutory interpretation de novo." *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006). Where there is "no dispute as to the facts to be applied to the terms of the contract the interpretation of the contract . . . is to be treated as a question of law for the judge." *Ober* v. *National Cas. Co.*, 318 Mass. 27, 30 (1945).

b. *Applicability of G. L. c. 186, § 15, to commercial lease.* As a preliminary matter, we must decide whether § 15 applies to provisions contained in commercial, rather than only residential leases. Section 15 provides:

> "Any provision of a lease or other rental agreement relating to real property whereby a lessee or tenant enters into a covenant, agreement or contract, by the use of any words whatsoever, the effect of which is to indemnify the lessor or landlord or hold the lessor or landlord harmless, or preclude or exonerate the lessor or landlord from any or all liability to the lessee or tenant, or to any other person, for any injury, loss, damage or liability arising from any omission, fault, negligence or other misconduct of the lessor or landlord on or about the leased or rented premises or on or about any elevators, stairways, hallways or other appurtenance used in connection therewith, shall be deemed to be against public policy and void."

---

[5]For purposes of the liability and insurance provisions of the lease, the leased premises include "[a]ll common areas, including but not limited to any parking areas, stairs, corridors, roofs, walkways and elevators . . . when they are used by LESSEE or LESSEE's employees, agents, callers or invitees."

[6]By the terms of OneBeacon's policy with Cummings, its coverage was intended as excess insurance.

"We interpret a statute according to the intent of the Legislature," *Commissioner of Correction* v. *Superior Court Dep't of the Trial Court for the County of Worcester*, 446 Mass. 123, 124 (2006), looking first to the statutory language because it "is the principal source of insight into legislative purpose." *O'Sullivan* v. *Secretary of Human Servs.*, 402 Mass. 190, 194 (1988), quoting *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). We will not expand or limit the meaning of a statute unless such is required by the "object and plain meaning" of the statute. *Canton* v. *Commissioner of the Mass. Highway Dep't*, 455 Mass. 783, 789 (2010), quoting *Rambert* v. *Commonwealth*, 389 Mass. 771, 773 (1983).

There is nothing in the words of the statute or its context that would suggest that its reach was intended to be less than all leases relating to real property. See G. L. c. 186, § 15. Indeed, we alluded to its applicability to commercial leases in *Young* v. *Garwacki*, 380 Mass. 162, 171-172 n.12 (1980) (statute "not limited by [its] terms to residential properties"),[7] but did not have occasion then to decide the question.

The purpose of the statute is to preclude a landlord from shifting responsibility for its own negligence to its tenants. See, e.g, *Young* v. *Garwacki*, *supra* at 171 (statute prohibits landlord from "exculpat[ing] himself from liability for negligent maintenance of the rented premises"). That purpose is not limited in its applicability to strictly residential leases.[8] When the Legislature has intended to distinguish between residential and commercial leases, it has included specific language to that effect. See, e.g., G. L. c. 186, § 10 (relating to "dwelling house"); G. L. c. 186, § 11A (termination of nonresidential leases); G. L. c. 186, § 13 (action to recover possession of premises for dwell-

---

[7] When enacted, G. L. c. 186, § 15, applied to leases entered into after its effective date of October 1, 1945. St. 1945, c. 445, § 2. In a decision rendered after that date, but relating to commercial leases in effect prior to it, we had no reservation concerning indemnification provisions of the type now voided by the statute, noting that the "statute does not apply to leases entered into before its effective date." *R.H. Macy & Co.* v. *Fall River*, 323 Mass. 624, 627 (1949).

[8] Our prior cases, recognizing a distinction between residential and commercial leases with respect to the application of common-law rules, do not suggest a different result. See, e.g., *Humphrey* v. *Byron*, 447 Mass. 322, 326-327 (2006) (collecting cases).

ing purposes); G. L. c. 186, § 14 (penalty on lessor for failure to furnish water, heat, and other utilities and services in premises for dwelling purposes); G. L. c. 186, § 15A (prohibition on wavier of notice provisions in rental agreement pertaining to residential property); G. L. c. 186, § 15B (provisions in residential leases); G. L. c. 186, § 15C (tax escalation in residential leases); G. L. c. 186, § 15F (waiver of jury trial void in residential lease provision); G. L. c. 186, § 18 (prohibition on reprisals against residential tenants); G. L. c. 186, § 20 (attorney's fees in actions involving residential property). Where the Legislature has not done so here, we will not impute such an intent.

c. *The liability provision.* The liability provision contains two operative clauses. The second clause is a straightforward indemnification provision essentially providing that Shafer will indemnify and hold Cummings harmless from liability for injuries and property damage arising out of the use or condition of the leased premises except for injuries that "directly result from the negligence of LESSOR." This clause is consistent with the prohibition set forth in § 15 insofar as it does not exculpate or relieve the landlord from liability for injuries caused by the landlord's own negligence.

The first clause of the liability provision is more problematic, and it is this clause on which the judge focused. The clause essentially provides that as between Cummings and Shafer, Shafer shall be "solely responsible" for personal injuries and property damage occurring on the leased premises except for those "resulting from the sole negligence" of Cummings. On its face, this language appears to shift to the tenant responsibility for injuries and damage that might arise from negligent acts for which Cummings may be partially, but not solely, responsible. Cummings has not explained how this language is consistent with the statutory prohibition against shifting "any or all liability" for the landlord's negligence to the tenant. G. L. c. 186, § 15. In the absence of such of an explanation, we conclude that it is violative of the statute and therefore void.[9]

In his summary judgment ruling, the judge focused only on

---

[9]It is possible, although not apparent, that the language of the first clause, which allocates responsibility between the landlord and tenant, was intended

this first clause of the liability provision, concluding that he need not rule on its validity because, on the basis of the record before him, the liability-shifting effect of it did not apply. Specifically, the judge ruled that because Morrison's injury occurred in a common area that Cummings was responsible for maintaining, the injury, if the result of negligence, could not have been the result of "any conceivable negligence" by Shafer. Therefore, the "sole negligence" exception to the first clause removed the negligence claim from the liability provision.

We disagree with the judge's conclusion that at this stage of the proceeding there is no conceivable way that Shafer might have been negligent. Whether Shafer may be negligent in the circumstances of this case will depend on whether she owed a duty of care to her patients as they traversed the common area parking lot to enter her office. While the general rule is that "the party in control of premises owes a duty to a lawful visitor to keep them in reasonably safe condition," *Hopkins* v. *F.W. Woolworth Co.*, 11 Mass. App. Ct. 703, 704 (1981), and cases cited, "[m]ore recent cases have deemphasized control as the all-decisive determinant and have focussed the inquiry on whether the defendant owed a duty of care to the plaintiff." *Id.* at 705. A tenant is not "automatically relieved" of a duty, either to warn or to make repairs, even where the landlord retains control of some portion of the common area, if the tenant is aware of the unsafe condition. *Id.*, citing *Monterosso* v. *Gaudette*, 8 Mass. App. Ct. 93, 97-98 (1979). As noted, see note 5, *supra*, the leased premises include an undivided portion of the common area. The questions of duty and breach in these circumstances are most appropriately resolved in the factual context as it develops in the underlying case. We therefore vacate the ruling below that there could not be "any conceivable negligence by Shafer" in this case, but as noted above, conclude that the first clause is void under § 15.

d. *The insurance provision.* The judge ruled that the insurance provision of the lease was void under § 15 because it

to be either a waiver of the tenant's right on behalf of its insurer to subrogation, or an exculpatory clause by which the tenant agrees not to make a claim against the landlord. Because the question is not before us, we do not express an opinion as to whether lease provisions incorporating either of those forms would violate § 15.

amounted to the type of indemnification barred by the statute. We disagree. An indemnity provision imposes obligations that are separate and distinct from the obligations imposed by an insurance provision. This is true even where, as Norfolk suggests, the insurance provision purports to insure the landlord for its own negligence. An "indemnity clause" is a "contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party might incur." Black's Law Dictionary 837-838 (9th ed. 2009). By contrast, "insurance" is a "contract by which one party (the insurer) undertakes to indemnify another party (the insured) against risk of loss, damage, or liability arising from occurrence of some specified contingency, and usu[ally] to defend the insured or to pay for a defense regardless of whether the insured is ultimately found liable. An insured party usu[ally] pays a premium to the insurer in exchange for the insurer's assumption of the insured's risk." *Id.* at 870.

The effect of an indemnity agreement is that A assumes the responsibility for B's negligence, regardless whether A itself bears any responsibility for the negligence. The extent of the obligation is determined by reference to the indemnity agreement. If, however, A agrees to purchase insurance for B's benefit, A will not personally bear any responsibility for B's negligence. Instead, A's insurer will bear the costs of B's negligence, provided that it is covered under the policy. The scope of an insurer's obligation is determined by an interpretation of the insurance policy. See, e.g., note 4, *supra.*

Commercial lease provisions requiring a tenant to acquire insurance for the benefit of a landlord have long been recognized and generally upheld. "Commercial tenants tend to be more sophisticated about the terms of their leases and, unlike residential tenants, commercial tenants generally purchase liability insurance." *Seaco Ins. Co. v. Barbosa,* 435 Mass. 772, 778, 779 (2002). *Id.* at 775-780 (declining to extend rule of *Peterson* v. *Silva,* 428 Mass. 751 [1999], to commercial leases where absent an express provision in the residential lease that established tenant's liability, the implied coinsurance doctrine would be applicable). See *Evans* v. *Sack,* 320 Mass. 84, 88 (1946) ("The obligation of the lessee was to keep the building and improve-

ments insured . . . for the benefit of the lessors"); *Richmond* v. *Kelsey*, 225 Mass. 209, 212 (1916), citing *Adams* v. *North Am. Ins. Co.*, 210 Mass. 550, 552 (1912) ("[A covenant to pay insurance] like that for the payment of taxes and betterments, was inserted for the benefit and indemnity of the lessor"); *Parkway Corp.* v. *Clark Equip. Co.*, 9 Mass. App. Ct. 878, 879 (1980) (landlord entitled to reimbursement for insurance premiums paid by it after tenant failed to secure insurance in accordance with terms of lease).

Although no Massachusetts appellate court has addressed precisely the question at issue here with regard to the effect of § 15 on insurance provisions, a recent decision of the United States District Court for the District of Massachusetts interpreting Massachusetts law has distinguished an obligation to purchase liability insurance from an obligation to indemnify in a dispute involving a commercial lease and the provisions of the statute. See *Great N. Ins. Co.* v. *Paino Assocs.*, 364 F. Supp. 2d 7 (D. Mass. 2005). In that case, the judge denied the tenant's motion for summary judgment with regard to its indemnification responsibilities under the lease. *Id.* at 26. The judge first concluded that the indemnification provision in the lease, which provided an exception for the landlord's own negligence, did not violate § 15. *Id.* at 23. He went on to reject the tenant's further argument that its obligation under the lease to purchase liability insurance insuring both the landlord and the tenant also violated § 15. The judge reasoned that, "[c]ourts in other jurisdictions have maintained the distinction between contractual terms obligating one party to carry insurance for the benefit of another and contractual terms for indemnification," *id.*, citing, *Olympic, Inc.* v. *Providence Wash. Ins. Co.*, 648 P.2d 1008, 1011 (Alaska 1982), and concluded that the tenant "has not mustered any support for the proposition that Massachusetts courts would muddle this distinction."

Cases from other jurisdictions, including Alaska, Florida Illinois, Nevada, and New York, have recognized this critical distinction. See, e.g., *Clarendon Am. Ins. Co.*, v. *Prime Group Realty Servs., Inc.*, 389 Ill. App. 3d 724, 733 (2009) ("The issue here, however, does not involve the tenant's promise to indemnify the landlord for its tortious conduct . . . but rather involves the tenant's promise to procure insurance naming the

landlord as an additional insured and insuring against the tenant's or landlord's negligent acts. These two promises of indemnification and insurance are distinct from one another"); *Sears, Roebuck & Co.* v. *Charwil Assocs. Ltd. Partnership*, 371 Ill. App. 3d 1071, 1078 (2007) ("Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages. . . . Conversely, under an agreement to obtain insurance, a promisor simply agrees to procure insurance and pay premiums. . . . Thus, under an agreement to obtain insurance, the promisor bears no responsibility in the event of an injury or damages once the insurance is obtained" [citations omitted]). See, e.g., *Olympic, Inc.* v. *Providence Wash. Ins. Co.*, 648 P.2d 1008, 1011 (Alaska 1982) (tenant's agreement to purchase insurance "does not constitute a hold harmless [indemnification] contract" and that lease covenant relating to tenant's obligation to purchase insurance "evinces only one clear and unequivocal intention — to transfer the cost of liability insurance to the tenant"); *Apol* v. *Shaw*, 647 So. 2d 139, 140-141 (Fla. Dist. Ct. App. 1994) (reversing holding that agreement to insure constituted indemnification agreement); *Coblentz* v. *Hotel Employees & Restaurant Employees Union Welfare Fund*, 112 Nev. 1161, 1168 (1996) (per curiam), quoting *Bovis* v. *7-Eleven, Inc.*, 505 So. 2d 661, 664 (Fla. Dist. Ct. App. 1987) ("The lease agreement sets out the two duties — to insure and to indemnify — as separate obligations. '[C]ontracting parties may agree that one will indemnify the other for loss from certain risks or they may agree to shift the risk of loss to a liability insurance company' "); *Roblee* v. *Corning Community College*, 134 A.D.2d 803, 804 (N.Y. 1987) ("A contract to procure or provide insurance coverage is clearly distinct from and treated differently than an agreement to indemnify" [citations omitted]).

We agree with the reasoning of these cases that an agreement in a lease that the tenant indemnify or hold harmless the landlord is distinct from an agreement to purchase insurance on the landlord's behalf, which covers the liability of both in the event of a negligently caused injury. The statute seeks to protect a tenant from overreaching by the landlord with respect to maintaining the safety of the leased premises. It does not seek to limit commercial landlords and tenants from negotiating the apportionment of risk through the acquisition of insurance for their mutual

protection and the benefit of third parties.[10] The purpose of insurance is to limit one's monetary liability and protect oneself against the consequences of one's own negligence, by allocating and managing risk through the payment of definite and affordable insurance premiums, rather than subjecting oneself to unknown damages from a potential lawsuit. While insurance does result in indemnification, the indemnification obligation does not extend to the tenant. Quite simply, the statute does not apply to insurance provisions, where the duty of indemnification resides, where it should — with the insurer.[11,12]

---

[10] A review of the legislative history of G. L. c. 149, § 29C (§ 29C), a statute that similarly voids provisions in construction contracts requiring a subcontractor to indemnify a general contractor for injuries not caused by the subcontractor, tends further support to our conclusion that G. L. c. 186, § 15, was not intended to bar insurance provisions like the one present here. When § 29C was enacted, in addition to prohibiting indemnification, it also specifically prohibited subcontractors from agreeing to insure or name as an insured a general contractor for any negligence of the general contractor. St. 1984, c. 484, § 43.

Given that § 29C was enacted forty years after § 15, the Legislature's inclusion of express language prohibiting *both* indemnification and insurance is instructive for our purposes because it suggests that the Legislature did not deem the two concepts to be interchangeable. See *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 554 (1996) (when it enacts subsequent statutes, Legislature deemed to be aware of prior existing ones). Eight months after its enactment, § 29C was rewritten to remove the language barring insurance agreements. St. 1985, c. 228, § 3.

[11] In this case, the insurance provision of the lease required that Dr. Shafer purchase liability insurance protecting both herself and Cummings in the event of an injury, and that Cummings be added as an additional insured on her policy. This distinguishes it from those cases in which there is an indemnification provision in a contract, and the indemnitor is required to procure insurance to insure his indemnification obligation. In such a circumstance, courts have held that if the indemnification obligation is void, the attendant insurance obligation may also be void. See, e.g., *Transcontinental Ins. Co.* v. *National Union Fire Ins. Co.*, 278 Ill. App. 3d 357, 362-368 (1996), citing *GTE N., Inc.* v. *Henkels & McCoy, Inc.*, 245 Ill. App. 3d 322, 325-328 (1993) (distinguishing agreements to purchase insurance for another from agreements to insure one's obligation to indemnify another party for that party's negligence).

[12] Our decision is consistent with decisions in New York, a State that has a similar statute prohibiting lease provisions requiring tenants to indemnify landlords for their own negligence. See *Great N. Ins. Co.* v. *Interior Constr. Corp.*, 7 N.Y.3d 412, 419 (2006) ("Where, as here, a lessor and lessee freely enter into an indemnification agreement whereby they use insurance to allocate the risk of liability to third parties between themselves, [the statute]

3. *Conclusion.* For the reasons stated, we vacate the judgment and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

does not prohibit indemnity"); *Kinney* v. *G.W. Lisk Co.*, 76 N.Y.2d 215, 218 (1990) (per curiam) ("By its terms, the statute addresses only agreements to indemnify or hold harmless. It makes no reference to agreements to purchase or maintain insurance . . .").