MARY BISHOP *vs.* TES REALTY TRUST & another.[1]

Essex. November 4, 2010. - March 1, 2011.

Present: SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Landlord and Tenant,* Repairs. *Negligence,* Repairs. *Statute,* Construction.

This court concluded that the statutory duty of a landlord under G. L. c. 186,
§ 19, to exercise reasonable care to correct an unsafe condition described
in a written notice from a tenant, applies to commercial leases. [11-18]

In a civil action brought by the plaintiff commercial lease tenant against the
defendant landlord, alleging that the tenant suffered injuries due to the
landlord's negligence in failing, after receiving written notice from the ten-
ant of an unsafe condition, to repair the roof of the single-story building
that the tenant leased, the judge erred in allowing the landlord's motion for
a directed verdict, where the evidence was sufficient to support a jury find-
ing that the landlord committed a breach of its statutory duty, under G. L.
c. 186, § 19, to remedy an unsafe condition described in a written notice
from the tenant, and that that breach of duty was a substantial contributing
cause of the tenant's injuries; however, the judge correctly concluded that
the evidence was not sufficient to support a finding that the landlord had a
common-law duty to repair the roof, that the landlord had contracted with
the tenant to repair the roof, or that previous repairs undertaken by the
landlord had caused the tenant's injuries. [18-19]

CIVIL ACTION commenced in the Superior Court Department on
April 11, 2005.

The case was tried before *Thomas R. Murtagh,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Gregory T. Smith* for the plaintiff.

*Robert F. Feeney* (*Anne M. Paone* with him) for the defend-
ants.

GANTS, J. The plaintiff, Mary Bishop (Bishop or tenant), oper-
ated a tanning salon from a single-story building in Swampscott
she leased from the defendants, TES Realty Trust (trust) and
Billie Jo Ulery, a trustee of the trust (collectively, landlord). On

[1] Billie Jo Ulery.

June 5, 2000, Bishop sent a certified letter, return receipt requested, to Michelle Timlin, Ulery's daughter and a trustee of the trust, directed to both Ulery and Timlin, complaining about the leaking roof, including cracks and leaks in the two skylights near the tanning beds.[2] Nothing was done in response to the letter until September, 2001, when Ulery's husband performed some roof repairs, but he did nothing on the side of the roof with the skylights. On May 14, 2002, rain water fell from a leak in or around one of the skylights, and Bishop placed a bucket beneath the leak to catch the water and protect the rug from damage. When she looked up to the skylight, plaster fell from the ceiling into her eye, causing her to fall backward and then to trip over the bucket as she tried to get to her feet, resulting in a serious rotator cuff injury in her shoulder.

Bishop filed suit in Superior Court, alleging that her injuries were caused by the landlord's negligence in failing to repair the roof. At the close of all the evidence, the judge allowed the landlord's motion for a directed verdict. The judge concluded that, under the commercial lease, Bishop was responsible for making all necessary repairs to the leased premises, which included the roof, and that the landlord owed no duty under the common law or the lease to repair an unsafe condition.[3] The judge also concluded that the defendants owed no statutory duty

---

[2]Several days before Mary Bishop sent the certified letter, Michelle Timlin came to the premises with an unidentified man who went up to the roof and used some tar to patch a leaking portion of the roof. There was no evidence where on the roof the repair was made, or whether the repair was at or near the skylights.

[3]Section 9 of the lease provided:

> "*Condition of Leased Premise; Maintenance and Repair.* The Tenant acknowledges that the Leased Premises are in good order and repair. The Tenant agrees to take good care of and maintain the Leased Premises in good condition throughout the term of the Lease.

> "The Tenant, at his expense, shall make all necessary repairs and replacements to the Leased Premises, including the repair and replacement of pipes, electrical wiring, heating and plumbing systems, fixtures and all other systems and appliances and their appurtenances. The quality and class of all repairs and replacements shall be equal to or greater than the original worth. If Tenant defaults in making such repairs or replacements, Landlord may make them for Tenant's account, and such expenses will be considered additional rent."

to repair an unsafe condition, because G. L. c. 186, § 19, did not apply to commercial leases.[4] Because the landlord owed no duty to repair the roof and because the landlord and tenant did not contract for the repair, the judge concluded that the landlord could be liable only if there was gross negligence in the gratuitous repair of the roof, and there was no evidence of gross negligence. The plaintiff appealed, and we transferred her appeal to this court on our own motion.

The fundamental issue on appeal is whether the statutory duty of a landlord under G. L. c. 186, § 19, to exercise reasonable care to correct an unsafe condition described in a written notice from a tenant applies to commercial leases. We conclude that it does. Because the evidence at trial, viewed in the light most favorable to the plaintiff, was sufficient to permit the jury to conclude that the tenant had given formal written notice of the leaky skylights, that the leaks were an unsafe condition, that the landlord committed a breach of its statutory duty to remedy the unsafe condition, and that the breach was a substantial contributing cause of the plaintiff's injury, we conclude that the judge erred in awarding a directed verdict in favor of the defendants. See *Gelinas* v. *New England Power Co.*, 359 Mass. 119, 123 (1971) (in deciding motion for directed verdict, judge must determine "whether the evidence, considered in its entirety and in its light most favorable to the plaintiff, was sufficient to

---

[4]General Laws c. 186, § 19, provides:

"A landlord or lessor of any real estate except an owner-occupied two or three-family dwelling shall, within a reasonable time following receipt of a written notice from a tenant forwarded by registered or certified mail of an unsafe condition, not caused by the tenant, his invitee, or any one occupying through or under the tenant, exercise reasonable care to correct the unsafe condition described in said notice except that such notice need not be given for unsafe conditions in that portion of the premises not under control of the tenant. The tenant or any person rightfully on said premises injured as a result of the failure to correct said unsafe condition within a reasonable time shall have a right of action in tort against the landlord or lessor for damages. Any waiver of this provision in any lease or other rental agreement shall be void and unenforceable. The notice requirement of this section shall be satisfied by a notice from a board of health or other code enforcement agency to a landlord or lessor of residential premises not exempted by the provisions of this section of a violation of the state sanitary code or other applicable by-laws, ordinances, rules or regulations."

permit the jury as the trier of facts to infer that some negligent act or omission by the defendant caused the injuries sustained by the plaintiff"). We, therefore, vacate the judgment and remand the case for a new trial.

*Discussion.* Under G. L. c. 186, § 19, after receiving the required notice of an unsafe condition, not caused by the tenant, in a portion of the premises controlled by the tenant, the tenant's invitee, or a subtenant, a "landlord or lessor of any real estate except an owner-occupied two or three-family dwelling" owes a duty to exercise reasonable care to remedy the unsafe condition. If a tenant or any person lawfully on the premises is injured as a result of the failure to correct the unsafe condition within a reasonable time, the injured party has a right of action in tort against the landlord for damages. *Id.* A landlord may not obtain a waiver of this duty in any lease or other rental agreement; any such waiver "shall be void and unenforceable." *Id.*

Although § 19 was enacted almost forty years ago, see St. 1972, c. 665, we have yet to decide whether the duty it imposes applies to commercial landlords.[5] To resolve this question, consistent with our general practice of statutory interpretation, we look first to the language of the statute because it is "the principal source of insight" into the intent of the Legislature. *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison*, 456 Mass. 463, 468 (2010), quoting *O'Sullivan* v. *Secretary of Human Servs.*, 402 Mass. 190, 194 (1988). While we generally conclude that the Legislature means what it says, we do not consider the language of the statute alone, but seek to ascertain the intent of the Legislature in enacting the statute "from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Halebian* v. *Berv*, 457 Mass. 620, 628-629 (2010), quoting *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006).

Focusing first on the language of § 19, there is nothing to suggest that it applies to less than all leases of real property,

---

[5]In *Young* v. *Garwacki*, 380 Mass. 162, 171 n.12 (1980), we noted that G. L. c. 186, § 19, was not limited by its terms to residential properties, but did not decide whether it applied to nonresidential properties.

except for leases of owner-occupied two- or three-family dwellings. Cf. *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison, supra* at 468 (interpreting G. L. c. 186, § 15). Apart from this exception, the duty applies to a "landlord or lessor of *any* real estate," which presumably includes commercial real estate (emphasis added). In enacting this statute, the Legislature demonstrated that it knew how to distinguish between "a landlord or lessor of residential premises" and a landlord of commercial premises, because the last sentence of the statute adds a second method for satisfying the notice requirement that pertains only to residential premises. G. L. c. 186, § 19 ("landlord or lessor of *residential premises*" may receive notice from "board of health or other code enforcement agency" of State sanitary code violation [emphasis added]).[6] "When the Legislature has intended to distinguish between residential and commercial leases, it has included specific language to that effect." *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison, supra* at 468-469, and statutes cited. "Where the Legislature has not done so here, we will not impute such an intent." *Id.* at 469.

The legislative intent to include commercial landlords within the scope of § 19 is also reflected in the legislative history of the statute. Before discussing that history in detail, it is important to understand the legal context in which § 19 was enacted in 1972, because this context sheds light on "the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Halebian* v. *Berv, supra.* Under the common law as it stood in 1972, a landlord owed a duty to tenants and visitors to "exercise reasonable care to maintain the common areas in a condition not less safe than they were, or appeared to be in, at the time of the letting to the particular tenant." *King* v. *G & M Realty Corp.*, 373 Mass. 658, 660 (1977). If the common areas were visibly unsafe at the time of the letting, the landlord owed no duty to make them safer.

---

[6]Notice from a health code enforcement agency regarding a "violation of the state sanitary code or other applicable by-laws, ordinances, rules or regulations" could only apply to residential landlords, because the State sanitary code does not apply to commercial properties. See G. L. c. 111, §§ 127A-127L; 105 Code Mass. Regs. §§ 410.000 et seq. (2007). If the Legislature had intended G. L. c. 186, § 19, to apply only to residential premises, it would not have needed to specify this limitation in the last sentence.

See *id.* As to the leased premises that the tenant solely controlled, "caveat emptor reigned." *Young* v. *Garwacki,* 380 Mass. 162, 165 (1980). "The tenant took the premises as he found them." *Id.* The landlord owed no duty to the tenant to remedy unsafe conditions in the areas over which the tenant had sole control, unless the landlord knew of hidden defects at the time of letting and failed to warn the tenant.[7] See *id.* See also *Ackarey* v. *Carbonaro,* 320 Mass. 537, 539 (1946).

In 1945, the Legislature enacted G. L. c. 186, § 15, which declared any lease provision "against public policy and void" that had the effect of indemnifying the landlord or exonerating the landlord from liability arising from the landlord's negligence on any part of the leased premises or common areas that was "not within the exclusive control of the lessee or tenant." St. 1945, c. 445, § 1.[8] This statute did not expand the scope of a landlord's liability beyond the common law; it merely declared void any attempt by a landlord, whether residential or commercial, to nullify by contract the already narrow scope of common-law liability. See *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison, supra* at 468-469.

In 1972, the Legislature began to exercise its authority to expand the scope of landlord liability by statute. First, in April, 1972, it enacted G. L. c. 186, § 15E, which, where a tenant or occupant of a building was injured because of a defect in a common area that was a violation of the building code in the city or town where the property was located, barred the "owner of a building" from raising as a defense in a negligence action that the defect existed at the time the property was let.[9] G. L. c. 186, § 15E, inserted by St. 1972, c. 157. While under the common law a landlord had no duty to remedy a building code

---

[7]In 1980, we held that this common-law rule no longer applied to residential tenancies, declaring that a residential landlord owes a common-law duty to exercise reasonable care in maintaining the safety of the leased premises under the control of the tenant. See *Young* v. *Garwacki, supra* at 164, 168, 170.

[8]In 1974, the Legislature amended G. L. c. 186, § 15, to delete the phrase, "and not within the exclusive control of the lessee or tenant." St. 1974, c. 575, § 1.

[9]The statute also declares "void and unenforceable" any waiver of this statutory protection in any lease or other rental agreement. G. L. c. 186, § 15E, as amended by St. 1974, c. 192, § 3.

violation that visibly existed at the time of letting, § 15E effectively imposed such a duty by precluding this defense in a negligence action.[10] By denying this defense to an "owner of a building," this statute did not distinguish between residential and commercial landlords.

Three months later, in July, 1972, having just overridden the common law to expand the scope of landlord liability for defects in a common area, the Legislature enacted § 19, which expanded the scope of landlord liability for unsafe conditions in areas controlled by the tenant where the tenant gives notice. Under § 19, once a landlord received proper notice, the landlord owed a statutory duty to remedy any unsafe condition in these areas that was not caused by the tenant. In contrast with § 15E, which applied only to tort actions brought by a tenant or occupant, § 19 applied to tort actions brought by the tenant "or any person rightfully on said premises" who was injured as a result of the failure to correct the noticed defect. The apparent legislative purpose was to protect any tenant or other person rightfully on the leased premises from injuries arising from unsafe conditions for which the landlord received the required notice.

The legislative intent to impose this duty on all residential and commercial landlords is perhaps best demonstrated by the change in language in the proposed legislation that eventually became § 19. The first precursor to § 19, 1971 House Doc. No. 2181, which later became 1971 House Doc. No. 5338, limited the statutory duty of care to a "landlord or lessor of real estate containing five or more dwelling units," excluding commercial landlords. In March, 1972, the House Committee on Commerce and Labor, to whom the bill had been referred, recommended 1972 House Doc No. 5270, which imposed the duty of care on a "landlord or lessor of any real estate except an owner-occupied two or three family dwelling," the language that survived in § 19. The change in language suggests that the Legislature considered, and rejected, limiting § 19 to residential

---

[10]Five years later, we abandoned this traditional common-law rule and held that a landlord is liable to a tenant and his guest for failing to exercise due care in maintaining common areas under the landlord's control, regardless of the condition of the common areas at the time of letting. See *King* v. *G & M Realty Corp.*, 373 Mass. 658, 660 (1977); *Lindsey* v. *Massios*, 372 Mass. 79, 81-82 (1977).

landlords. See *Sudbury* v. *Scott*, 439 Mass. 288, 301 (2003) (redrafting of bill demonstrates legislative intent); *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 596-597 (1974) ("history of [statute] indicates that the Legislature has been well aware of the significance of the exclusion or inclusion of the word 'voluntarily' "); *Hoban* v. *Boston Retirement Bd.*, 355 Mass. 681, 683-684 (1969) (where some versions of bill said, "may," and others said, "shall," selection of "shall" reflected legislative intent).

In concluding that § 19 did not apply to commercial landlords, the judge declared that it would not "make any sense" to allow a tenant, through notice, to impose on a commercial landlord a duty to remedy an unsafe condition that was not imposed under the common law or by the terms of the lease.[11] In *Humphrey* v. *Byron*, 447 Mass. 322, 326-328 (2006), we refused to extend to commercial landlords the common-law obligation we imposed on residential landlords in *Young* v. *Garwacki*, 380 Mass. 162, 165 (1980), to exercise reasonable care to remedy defects on the leased premises. As a result, under our common law a commercial landlord is liable in tort for injuries arising from unsafe conditions on the landlord's property only if (1) the landlord "contracted to make repairs and made them negligently, or (2) the defect that caused the injury was in a 'common area' or other area appurtenant to the leased area, over which the lessor had some control." *Humphrey* v. *Byron, supra* at 328-329, quoting *Chausse* v. *Coz*, 405 Mass. 264, 266 (1989). The judge is correct that, if § 19 applies to commercial landlords, a commercial tenant, by giving the required notice of an unsafe condition on the leased premises, may impose an obligation on the landlord to remedy the unsafe condition that the landlord does not have under the common law.[12]

---

[11]The judge orally provided this explanation in preliminarily ruling that G. L. c. 186, § 19, did not apply to commercial landlords. When he granted the landlord's motion for a directed verdict and orally set forth his reasons, he made no mention of § 19. We infer from his allowance of the motion that his position regarding § 19 remained the same.

[12]The judge is also correct that, under G. L. c. 186, § 19, any waiver of the provision in a lease would be void and unenforceable, and under G. L. c. 186, § 15, the commercial landlord would be barred from adding a lease provision that would indemnify the landlord for liability arising from the unreasonable failure to remedy the unsafe condition.

But the mere fact that a statute imposes a duty of care beyond that provided under the common law is not a reason to interpret the statute to be consistent with the common law where the Legislature intended to impose on landlords a duty that did not exist under the common law. As we have shown, when § 19 was enacted in 1972, neither residential nor commercial landlords under the common law owed the duty imposed by the statute to repair unsafe conditions on the portion of the leased premises solely in the tenant's control after receiving the required notice. This is not a case where we can infer that the Legislature intended to enact legislation that comported with the common law, and interpret the language in accordance with that intent. See, e.g., *Brear* v. *Fagan*, 447 Mass. 68, 72, 74 (2006) ("legislation was explicitly designed to supplant those common-law rules" governing restrictions on land). Rather, this is a case where the Legislature intended to expand the scope of a landlord's duty beyond the common law, which the Legislature is entitled to do and we are required to respect where, as here, there is a rational basis. See *Commonwealth* v. *Acen*, 396 Mass. 472, 477 n.13 (1986), quoting *New Bedford Standard-Times Publ. Co.* v. *Clerk of the Third Dist. Court of Bristol*, 377 Mass. 404, 410 (1979) ("Unless there is a violation of a constitutional guaranty, the Legislature may modify or abrogate common law practices under Part II, c. 6, art. 6, of the Massachusetts Constitution"). See also *Chebacco Liquor Mart, Inc.* v. *Alcoholic Beverages Control Comm'n*, 429 Mass. 721, 722-723 (1999) (where no fundamental interest involved and no suspect class burdened, statute subject to rational basis review).

Nor is it reasonable to fear that interpreting § 19 to apply to all landlords, including commercial landlords, will render meaningless the more limited common-law duty owed by commercial landlords or lease provisions imposing a duty to repair on the tenant. The statutory duty imposed by § 19 applies only where the required notice of an unsafe condition has been provided to the landlord. Where the lease imposes on the tenant a duty to repair, the tenant is unlikely to provide such notice and is more likely to repair the condition herself. Where a tenant with such a duty under the lease gives the required notice and the landlord remedies the unsafe condition, the landlord

may bill the tenant for the cost of repair or, as expressly provided under the lease in the instant case, charge the cost of repair as additional rent. And if the application of § 19 to commercial landlords does, in practice, devour the common-law rule or allow commercial tenants to shirk their responsibilities under a lease, commercial landlords may petition the Legislature to limit § 19 to residential landlords, as the Legislature has done in many other statutes. See *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison*, 456 Mass. 463, 468-469 (2010) (listing statutes where Legislature distinguished between residential and commercial landlords).

At oral argument, the defendants conceded that § 19 applies to commercial landlords but argued that the statute did not apply here because the statute is limited to unsafe conditions not caused by the tenant. The defendants contend that where, as here, the lease provides that the tenant is responsible for all necessary repairs, the tenant should be deemed to have "caused" an unsafe condition by failing to repair it. We conclude that this interpretation is inconsistent with both the language and the spirit of the provision in § 19 that makes "void and unenforceable" any provision in a lease that waives a landlord's obligations under § 19. If a lease provision making the tenant responsible for all repairs meant that the tenant could not, through the required notice, impose on the landlord a duty to repair an unsafe condition because the tenant would always be deemed to have caused the unsafe condition by failing to repair it, the lease provision would effectively constitute a waiver of the landlord's obligations under § 19, which is not permitted. See G. L. c. 186, § 19.

We conclude that the judge erred in allowing the landlord's motion for a directed verdict because the evidence was sufficient to support a jury finding that the defendants committed a breach of their statutory duty to remedy an unsafe condition under § 19, and that their breach of duty was a substantial contributing cause of the plaintiff's injuries. See *Curtiss-Wright Corp.* v. *Edel-Brown Tool & Die Co.*, 381 Mass. 1, 4 (1980), quoting *Chase* v. *Roy*, 363 Mass. 402, 404 (1973) ("If, upon any reasonable view of the evidence, there is found a combination of facts from which a rational inference may be drawn in favor of the plaintiffs, there was an issue for decision by the

jury"). The jury reasonably could have found that, because the leaks in the roof at or around the skylights were near the electrical tanning beds, an unsafe condition existed of which the landlord had notice; and because the landlord had a statutory duty to repair the unsafe condition, but failed to do so, the injury that resulted was caused by the landlord's breach.[13]

We agree with the judge, however, that the evidence was not sufficient to support a finding in favor of the plaintiff on any other legal theory presented. Under the common law, the landlord had no duty to repair the roof because the tenant leased the entire one-story building, so the roof was not "in a 'common area' or other area appurtenant to the leased area, over which the lessor had some control." *Humphrey* v. *Byron*, 447 Mass. 322, 329 (2006), quoting *Chausse* v. *Coz*, 405 Mass. 264, 266 (1989). Nor did the landlord contract with the tenant to repair the roof, either in the lease or in some other agreement, so there was no duty reasonably to make the repairs. See *Humphrey* v. *Byron*, *supra* at 328-329. Furthermore, there was no evidence that any negligence in the roof repairs in 2000 or 2001 caused the plaintiff's injuries, because there was no evidence that the repairs were made in the area of the skylight where the plaster fell onto the plaintiff, and no evidence that the negligent repair of one part of the roof caused another part of the roof to collapse.[14] Therefore, the plaintiff may proceed at a new trial only on her claim of statutory liability under § 19.[15]

*Conclusion.* For the reasons stated, the judgment is vacated

---

[13]We note that although the certified letter was admitted in evidence solely for the purpose of notice, there was other evidence, apart from the letter, that demonstrated that the skylights near the tanning beds were leaking at the time the letter was sent.

[14]Because there was no evidence that the roof repairs caused the plaintiff's injuries, we need not decide if we should revisit whether "[g]ratuitous repair creates tort liability only if it is done in a grossly negligent fashion." *Young* v. *Garwacki*, 380 Mass. 162, 166 (1980), and cases cited.

[15]We have often said that "the better procedure in a case in which it is a close question whether the standard for granting a directed verdict is met is to allow the matter to go to the jury. If the judge then decides that the jury's verdict cannot stand, a motion for judgment notwithstanding the verdict may be allowed." *Smith* v. *Ariens Co.*, 375 Mass. 620, 627-628 (1978). See *Upham* v. *Chateau De Ville Dinner Theatre, Inc.*, 380 Mass. 350, 355 n.9 (1980). The judge appeared to believe that he could not reserve decision on the motion for a directed verdict and allow the jury to answer special questions as to

and the case remanded for a new trial on the plaintiff's claim of statutory liability under G. L. c. 186, § 19.

*So ordered.*

---

liability, causation, and damages on the statutory liability theory under § 19, because it would permit the jury to decide the case based on what he thought to be an erroneous view of the law. The judge took too narrow a view of his options. Where, as here, there is not settled law on a theory of liability, a judge may provide the jury with special questions that will answer all the factual questions in dispute and, if the jury verdict does not render the legal question moot, resolve the legal question in a motion for judgment notwithstanding the verdict. This way, if the judge is in error as to the law, the case need not be retried, and a judgment may enter based on the answers to the relevant special questions. See *Young* v. *Garwacki, supra* at 164 n.1 (commending judge for providing jury with special questions on disputed theory of liability to avoid need for retrial). See also *Scott* v. *Garfield,* 454 Mass. 790, 796 n.9 (2009).